16734

PURDY v. MOISE *ET AL.*

(75 S. E. (2d) 605)

*Messrs. C. M. Edmunds* and *Lee & Moise,* of Sumter, *for Appellants,*

*Messrs. Nash & Wilson* and *M. M. Weinberg*, of Sumter, for Respondent,

April 14, 1953.

TAYLOR, Justice.

On July 11, 1949, the city of Sumter, South Carolina, adopted a zoning ordinance which was in full force and effect in 1952 when respondent applied for a permit to construct a "tourist court" or "motor court" on certain property affected by the following regulations as set forth in the ordinance:

"II (A) Use Regulations: In the residence district no buildings, or land shall be used and no building shall be here-

after erected or structurally altered, unless otherwise provided in this ordinance, except for the following uses:

"(1) One-family dwellings, two-family dwellings, multiple dwellings.

"(2) Boarding houses, lodging houses, hotels not involving the conduct of any business other than for the sole convenience of the guests thereof.

"(3) Schools, institutions of an educational or philanthropic nature, public buildings.

"(4) Churches, convents.

"(5) Hospitals, clinics.

"(6) Museums, art galleries, libraries, parks, playgrounds not conducted for profit."

. Hearings were duly held on the above application resulting in its refusal by the Zoning Board. Respondent then appealed to the city council which affirmed the findings of the Zoning Board. Respondent applied for and obtained from the Honorable J. Frank Eatmon, Judge of the Third Judicial Circuit, a writ of *certiorari* requiring appellants to produce the record before him at his Chambers in Kingstree, South Carolina. Thereafter, in his order dated August 30, 1952, Judge Eatmon reversed the ruling of the city council and Zoning Board and ordered the City of Sumter to issue the permit applied for. Due notice of intention to appeal to this Court followed.

On September 9, 1952, respondent served on appellants notice of a motion before Judge Eatmon to require the City of Sumter to file bond with the Clerk of Court for Sumter County in an amount not less than $27,500.00. September 12, 1952, the Building Inspector of the City of Sumter, pursuant to the provisions of Section 787, Code of 1942, filed with the Clerk of Court for Sumter County the permit applied for to abide the judgment of this Court.

On September 16, 1952, Judge Eatmon issued an order enjoining the appellants from interfering with the construction of said building and requiring them to issue the permit

applied for, unless within five days from the date of said order the appellants should file bond with the Clerk of Court for Sumter County in the amount of $15,000.00 with good and sufficient surety, which bond should be conditioned to pay such costs as the respondent might sustain by reason of the appeal to this Court from the order of August 30, 1952, and also to pay any damages on account of loss in the event that said order should be sustained by this Court. Due notice of intention to appeal from this order was served on the respondent.

Upon due notice the appellants moved before the Honorable D. Gordon Baker, Chief Justice of the Supreme Court of South Carolina, for an order of supersedeas staying the order of Judge Eatmon of August 30, 1952, and also the order of Judge Eatmon of September 16, 1952. Chief Justice Baker refused the motion for a supersedeas, holding that appellants could issue the permit as ordered without losing and without waiving any of their rights in the pending appeal.

Appellants now come to this Court upon exceptions which according to their brief present the following questions:

"1. Does the Respondent have the right to erect a tourist court or motor court in a residential zone under the Zoning Ordinance of the City of Sumter which permits the erection of hotels, multiple dwellings, lodging houses and boarding houses in said zones?

"2. Is there any evidence properly before the Court that the Zoning Board and City Council of the City of Sumter acted unreasonably, arbitrarily or capriciously in refusing an application for a variance from the terms of the Zoning Ordinance?

"3. Did the Trial Judge have the legal power and authority to issue his Order of September 16, 1952:

"(a) Requiring the filing of a bond in the amount of $15,000.00 or the issuance of the permit applied for;

"(b) Fixing the Respondent's damages at $15,000.00 or more;

"(c) Enjoining the Appellants from interfering with Respondent?"

In determining the first question, we are confronted with a dearth of decisions on the subject by reason of the fact that "motor courts" or "tourist courts" are relatively modern terms not found in the law dictionaries but used to denominate such institutions or places of business herein described and exist by reason of the demand by the transient public, who utilize the automobile principally as a means of transportation and therefore have need for convenient, temporary lodging. We have, however, as our guide the well founded principle of law that statutes or ordinances in derogation of natural rights of persons over their property are to be strictly construed as they are in derogation of the common law right to use private property so as to realize its highest utility and should not be impliedly extended to cases not clearly within their scope and purpose. *Powell v. Greenwood County,* 189 S. C. 463, 1 S. E. (2d) 624; *Babb v. Rose,* 156 Kan. 587, 134 P. (2d) 655; *Luedke v. Carlson,* S. D., 41 N. W. (2d) 552; *Modern Builders v. Building Inspector of City of Tulsa,* Okl. Sup., 168 P. (2d) 883; *Monument Garage Corp. v. Levy,* 266 N. Y. 339, 194 N. E. 848; *Landay v. Zoning Board of Baltimore,* 173 Md. 460, 196 A. 293, 114 A. L. R. 984. It follows that the terms limiting the use of the property must be liberally construed for the benefit of the property owner.

The proposed structure in the instant case consists of twenty or more units, all contiguous, with the center unit being of two stories, having a lobby, registration desk, and safe for the keeping of valuables, all rooms to be furnished with furniture, baths, lights, linens and maid service and to be utilized to accommodate transient guests for compensation.

In *Pinkerton v. Woodward,* 33 Cal. 557, 91 Am. Dec. 657, Justice Rose refers to the old rule that "an inn is a house where a traveller is furnished with everything which he has occasion for while on his way" but points out that this definition is not an exact one in that inns are no longer

required to serve wine or spirituous liquors or provide accommodations for the traveler's horse and later refers to an inn as "a place open for accommodations of a transient nature." And in *People v. Gold,* Sp. Sess., 6 N. Y. S. (2d) 264, 265, 267, we find the following language: "Thus the distinguishing characteristic of a hotel is the transitory nature of [the business]. This distinction is recognized in Bouvier's Law Dictionary." And in the recent case of *Edwards v. City of Los Angeles,* 48 Cal. App. (2d) 62, 119 P. (2d) 370, 373, citing *Lignot v. Jaekle,* 72 N. J. Eq. 233, 65 A. 221, the following language was used: "Structures placed side by side, or one in the rear of another, or in a circle or semi-circle, and frequently called inns or courts, do not lose their identity as hotels, rooming houses or apartments merely by bestowing upon them a different appellation, if in fact they are used to lodge the public." This principle of law is further recognized in *Fay v. Improvement Co.,* 93 Cal. 253, 26 P. 1099, 28 P. 943, 16 L. R. A. 188, in a suit involving loss of guest's baggage by fire, the defendant pleaded that the law of innkeepers did not apply since the grounds were for the exclusive use of guests and enclosed by a fence with a locked gate. The Court held that the test was whether or not defendant held itself out to furnish accommodations for transients. And in *Crockett v. Troyk,* Tex. Civ. App., 78 S. W. (2d) 1012, 1014, which was an action by an occupant of a tourist cabin against the owner thereof for injuries sustained through a gas explosion allegedly caused through the negligent use of a defective connection to a gas heater, we find the following:

"An innkeeper is not an insurer of his guest's personal safety, but his liability does extend to injuries received by the guest from being placed in an unsafe room, because such a matter is peculiarly within the knowledge, control, and power of the innkeeper. It is also settled, both at common law and by the decisions in this country, that, where a guest has proved use by an innkeeper of unsafe and defective gas fixtures and appliances, in consequence of which gas has

escaped, causing injury to the guest, he has established a *prima facie* case of negligence against the innkeeper."

"An 'inn' or 'hotel' has been properly defined as a public house of entertainment for all who choose to visit it. It is this publicly holding a place out as one where all transient persons, who may choose to come, will be received as guests for compensation, that is made the principal distinction between a hotel and a boarding house, in many well-considered decisions, * * *." *Holstein et ux. v. Phillips & Sims,* 146 N. C. 366, 59 S. E. 1037, 1039, 14 L. R. A., N. S., 475. For further reference see Zoning, 58 Am. Jur., Secs. 62-63 and annotations thereunder.

It is argued by appellants that under the generally accepted meaning of the words "tourist court" and "motor court" one could not have under consideration a hotel. The generally accepted meaning of words used in statutes or ordinances are to be accepted unless such words have a well recognized meaning in law; if so, they are presumed to have been used in that sense, *Coakley v. Tidewater Construction Corp.,* 194 S. C. 284, 9 S. E. (2d) 724; *Powers v. Fidelity & Deposit Co. of Maryland,* 180 S. C. 501, 186 S. E. 523. The word hotel does have a well recognized meaning in law which under its terms are such as to encompass that of "tourist court" or "motor court". The services rendered to the public may be of wide variances but such variances are in the method or quality rather than the character of such services.

The foregoing is in conformity with a later construction of this ordinance by the same "Zoning Board" or Board of Adjustment as it is officially known. The record discloses that by authority of the same ordinance under consideration here, the Board of Adjustment issued on September 4, 1952, its permit for the construction of a "motor-court hotel" in another part of the city which was similarly zoned as the property heretofore referred to. The Board therefore construed the ordinance as giving it power to grant permits for the erection and operation of such places

of business and this construction of its own ordinance, the enforcement of which it is charged with, should be given some consideration and not overruled without cogent reason therefor. *Read Phosphate Co. v. S. C. Tax Commission*, 169 S. C. 314, 168 S. E. 722.

We are of the opinion that respondent has the right to erect a "tourist court" or "motor court" on the property in question under the ordinance heretofore referred to. Hence the order of the Circuit Court as it relates thereto dated August 30, 1952, is affirmed.

It is unnecessary to pass upon the other questions presented by the exceptions since the permit has already been issued and no bond has been filed pursuant to the order of September 16, 1952.

FISHBURNE, STUKES, and OXNER, J.J., concur.

BAKER, C. J., not participating.