543 S.E.2d 538

**CITY OF MYRTLE BEACH, Respondent,**

v.

**JUEL P. CORPORATION and Gay Dolphin, Inc., Petitioners.**

**No. 25261.**

Supreme Court of South Carolina.

Heard Feb. 8, 2001.

Decided March 12, 2001.

44

Howell V. Bellamy, Jr., and Douglas M. Zayicek, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for petitioners.

Michael W. Battle, of Battle & Vaught, of Conway, for respondent.

BURNETT, Justice:

This case involves the proper construction of a Myrtle Beach city ordinance concerning abandoned and obsolete signs. Myrtle Beach Code § 902.4.7. We granted certiorari to review a decision of the Court of Appeals holding petitioners' sign could be deemed abandoned regardless of petitioners' intent. *City of Myrtle Beach v. Juel P. Corp. and Gay Dolphin, Inc.*, 337 S.C. 157, 522 S.E.2d 153 (Ct.App.1999). We reverse.

## FACTS

In the early 1970s, petitioners purchased Ed's Hobby Shop in Myrtle Beach. The shop includes a rooftop sign, which is arguably the most prominent sign location in Myrtle Beach.

In 1979, Myrtle Beach enacted a zoning ordinance which prohibited rooftop signs in certain areas of the city, including the area where petitioners' sign was located. Section 902.8.3 of the zoning ordinance provided that rooftop signs had an amortization period of three years. In 1985, after the conclusion of a lengthy legal challenge to the city's comprehensive sign ordinance, the city notified petitioners that its ordinance had been declared legal, constitutional, and enforceable, and ordered petitioners to remove the rooftop sign from Ed's Hobby Shop. Petitioners, through an agent, responded by alerting the city to former S.C.Code Ann. § 57–25–195 (Supp. 1980) (repealed in 1990), which would have required the city to pay just compensation for the sign. Rather than compensate petitioners for the sign's removal, the city chose not to enforce its 1985 letter.

In 1989, in the imminence of Hurricane Hugo, petitioners removed the sign facing to minimize damage from the storm. Shortly after the storm had passed, petitioners received a letter from the city informing them the sign was more than 50% damaged and could not be restored. Petitioners asked for repair estimates from three different sign companies, all of which agreed with petitioners' estimate that the sign was only 10% damaged. Petitioners approached the city's Director of Construction Services with these estimates, and, when he refused to concede their damage estimate, presented the estimates to the city manager. Petitioners attempted to reach

a settlement with the city manager in which petitioners would agree to remove the rooftop sign in exchange for a permit for a unipole sign.

For the next five years, the sign remained vacant. Neither petitioners nor the city pursued formal appeals or informal negotiations. During this time, however, petitioners continued to pay Highway Department fees and maintain electricity to the sign. In the fall of 1994, petitioners installed new sign facing. On November 8, 1994, the city notified petitioners that the sign violated the city zoning ordinance, § 902.4.8, which prohibits rooftop signs. When petitioners did not remove the sign, the city sought an injunction. In its second amended complaint, dated September 24, 1996, the city for the first time claimed petitioners had abandoned their sign. Section 902.4.7 of the Myrtle Beach Code provides:

> Any sign which advertises or pertains to a business, product, service, event, activity or purpose which is no longer conducted or that has not been in use for three months or which is no longer imminent, or any sign structure that no longer displays any sign copy shall be deemed to be an obsolete or abandoned sign.

The Master–in–Equity for Horry County conducted a hearing on the city's injunction action and petitioners' takings counterclaim. The Master ruled the city could not rely on its ordinance because to do so would retroactively deprive petitioners of a vested right. He further ruled intent is a necessary element of abandonment, and found petitioners "did not simply abandon the most prominent and valuable sign in Myrtle Beach." The Court of Appeals reversed, holding a property owner's intent is irrelevant when an ordinance specifies an objective time frame after which a nonconforming use shall be deemed abandoned. *City of Myrtle Beach v. Juel P. Corp. and Gay Dolphin, Inc.*, 337 S.C. 157, 522 S.E.2d 153 (Ct.App.1999).

## DISCUSSION

Petitioners argue several issues on appeal. We decline to reach these issues because we conclude the city's ordinance does not provide an objective time frame for abandonment.

When interpreting an ordinance, legislative intent must prevail if it can be reasonably discovered in the language used. *Charleston County Parks and Rec. Comm'n v. Somers,* 319 S.C. 65, 459 S.E.2d 841 (1995). The determination of legislative intent is a matter of law. *Id.* In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 417 S.E.2d 592 (1992). "[O]rdinances in derogation of natural rights of persons over their property are to be strictly construed as they are in derogation of the common law right to use private property so as to realize its highest utility and should not be impliedly extended to cases not clearly within their scope and purpose." *Purdy v. Moise,* 223 S.C. 298, 302, 75 S.E.2d 605, 607 (1953).

We read the ordinance as follows:

Any sign

which advertises or pertains to a business, product, service, event, activity, or purpose

[a] which is no longer conducted or [b] that has not been in use for three months or [c] which is no longer imminent

or [2] any sign structure that no longer displays any sign copy

shall be deemed to be an obsolete or abandoned sign.

Myrtle Beach Code § 902.4.7. The city's proposed construction, "Any sign ... that has not been in use for three months ... shall be deemed to be an obsolete or abandoned sign," is a forced construction that would impermissibly expand the ordinance's operation. We cannot harmonize the city's interpretation with our obligation to construe the ordinance strictly.

While the intent of the city may well have been to provide a three-month period of abandonment for signs, that intent is not expressed in the language of the ordinance. Moreover, the portion of the ordinance which clearly applies to petitioners' sign—"any sign structure that no longer displays any sign copy"—contains no time provisions whatsoever.

Because the ordinance expresses no time frame for abandonment, we apply the common law. Under the common law:

> In order to constitute abandonment, it must appear that there was a discontinuance of the nonconforming use with the intent to relinquish the right to so use the property. The question is largely one of intention and must be determined from all of the surrounding facts and circumstances.

*Conway v. City of Greenville*, 254 S.C. 96, 105, 173 S.E.2d 648, 652–53 (1970). We find abundant evidence in the record to support the Master's finding petitioners did not intend to abandon their sign.

## CONCLUSION

Because the city's ordinance does not provide an objective time frame for abandonment of a nonconforming use, the common law of abandonment controls. The evidence supports the finding that petitioners did not intend to abandon their rooftop sign.

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.