580 S.E.2d 440

Susan OLSON, Petitioner/Respondent,

v.

FACULTY HOUSE OF CAROLINA, INC. and The University of South Carolina, Defendants,

South Carolina Department of Labor, Licensing and Regulation, Intervenor,

of whom FACULTY HOUSE OF CAROLINA, INC., is Respondent/Petitioner,

and

The University of South Carolina, is Respondent.

No. 25632.

Supreme Court of South Carolina.

Heard Jan. 8, 2003.

Decided April 28, 2003.

Rehearing Denied May 29, 2003.

---

Robert A. McKenzie and Gary H. Johnson, II, of McDonald, McKenzie, Rubin, Miller, and Lybrand, LLP, of Columbia, for Petitioner/Respondent.

Andrew F. Lindemann, of Davidson, Morrison, and Lindemann, PA, of Columbia, for Respondent/Petitioner.

William L. Pope, of Pope and Rogers, of Columbia, for Respondent.

Michael K. Lesesne, of the South Carolina Department of Labor, Licensing and Regulation, of Columbia, for Intervenor.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 544 S.E.2d 38 (Ct.App.2001). We affirm in result.

## FACTS

Olson is a childhood polio victim who, prior to November 6, 1995, was able to walk with the assistance of crutches. On that day, Olson ate lunch at the Faculty House, a dining club located on the campus of the University of South Carolina (University).[1] While Olson was walking toward the ladies room, the tip of one her crutches slipped in an unknown liquid substance, causing the crutch to skid away from Olson's body. Although she did not fall to the floor, Olson suffered a torn rotator cuff and other injuries, and has been confined to a wheel chair since the accident.

Olson instituted this action against the Faculty House alleging common law negligence, and violation of S.C.Code Ann. § 10–5–210 et seq. (Accessibility Act or Act).[2] Thereafter, the University was added as a defendant. The trial court granted summary judgment to both Faculty House and the University. With respect to Olson's claim against the Faculty House, the trial court ruled Olson had not demonstrated any violation of the Accessibility Act. As to the University, the court ruled Olson had failed to timely file her complaint within the applicable statute of limitations. The court denied summary judgment on Olson's common law negligence claims, and the Court of Appeals affirmed. *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 544 S.E.2d 38 (Ct.App.2001).[3]

---

1. The building was leased to the Faculty House by the University.

2. This Article is entitled "Construction of Public Buildings for Access By Persons with Disabilities."

3. Olson's common law claims remain pending.

## ISSUES

1.   Did the Court of Appeals err in affirming the grant of summary judgment on Olson's Accessibility Act claims?
2.   Should the Court of Appeals have addressed the denial of Faculty House's motion for summary judgment as to Olson's common law claims?

## 1.   ACCESSIBILITY ACT

Whether the trial court correctly granted summary judgment depends upon whether the Accessibility Act creates a higher standard of care in foreign substance slip and fall cases to physically disabled individuals than to other business patrons.   Although we are sympathetic to Olson, we find nothing in the Act evinces a Legislative intent to alter traditional common law principles of foreign substance slip and fall liability.

As noted by the Court of Appeals, the General Assembly enacted legislation in 1963 for the construction of public buildings in such a manner as to make them accessible to physically disabled persons.   Act No. 174, 1963 Acts 189. *Olson, supra.*   Thereafter, the Legislature enacted the Accessibility Act. The purpose of the Act is to "enable persons with disabilities to achieve maximum personal independence; to use and enjoy ... public buildings ..., and to participate fully in all aspects of society."   S.C.Code Ann. § 10–5–210 (2001 Supp.).   In furtherance of these goals, the S.C. Board for a Barrier Free Design [4] was created and required to adopt the latest revisions of the American National Standards Institute (ANSI) specifications A117.1, with modifications as the Board deems appropriate.   S.C.Code Ann. § 10–5–250 (Supp.2001). Section 4.5.1 of the ANSI standards, which was adopted by the Board, provides that floors "shall be stable, firm, and **slip resistant,** and shall comply with section 4.5." [5] (emphasis supplied).

---

4.   The Board was abolished in 2000 when the Accessibility Act was rewritten.   In its place, there is now an Accessibility Committee for the South Carolina Building Codes Council.   S.C.Code § 10–5–235 (2001 Supp.).

5.   Section 4.5 of the ANSI standards provides, "Slip resistance is based on a frictional force necessary to keep a shoe or crutch tip from

It is conceded by all parties to this case that the floor of the Faculty House was sufficiently slip resistant **when dry.** Accordingly, the issue is whether, by virtue of the Act, Faculty House had a duty, solely with respect to its disabled patrons, to ensure that its floor were **more slip resistant,** in the presence of a foreign substance, than required by common law.

In *Wintersteen v. Food Lion, Inc.,* 344 S.C. 32, 35–36, 542 S.E.2d 728, 730 (2001), we adhered to our common law foreign substance analysis stating,

> although there may be a foreseeable risk that substances will wind up on the floor, there is no specific act of the defendant which causes the substance to arrive there, i.e., it generally arrives there through the handling of a third party. To require shopkeepers to anticipate and prevent the acts of third parties is, in effect, to render them insurers of their customers' safety. This is simply not the law of this state.

■ Olson asserts that section 10–5–260 of the Act establishes a higher duty of care than owed under the common law. We disagree.

Section 10–5–260   provides, in pertinent part,

"It is the responsibility of the owner or the occupant of property which contains **structural or building elements** or components required to be in compliance with this article, to **continuously maintain these elements and components in a condition that is safe and usable by persons with disabilities at all times.**   (Emphasis supplied).

We agree with the Court of Appeals' holding that the plain and ordinary meaning of "maintain" under § 10–5–260 refers to the safety of the structural elements of the floor, not to the

---

slipping on a walking surface under the conditions of use likely to be found on the surface. Although it is known that the static coefficient of friction is one basis of slip resistance, there is not as yet a generally accepted method to evaluate the slip resistance of walking surfaces for all use conditions." Under the 1961 ANSI standards, floors were required to have a floor that was nonslip. The 1961 standards were in effect at the time the floor was constructed in 1976, but the current version were in effect at the time of the accident. Regardless, both versions require essentially the same thing, i.e., either nonslip, or slip resistant floors.

presence of a foreign substance on its surface. To hold otherwise would impose a duty upon merchants to continuously inspect and maintain floors to ensure their freedom from foreign substances. Such a duty would be contrary to our traditional foreign substance analysis. We find nothing in the Accessibility Act which alters these very basic tenets of South Carolina law. While we agree with Olson that the Act does, indeed, impose some heightened burdens upon merchants and business owners to ensure that buildings are accessible and barrier free, we simply cannot agree that the Act also requires those merchants to essentially ensure the safety of physically disabled patrons in foreign substance situations. Had the Legislature intended such a broad departure from our common law analysis, it would have said so. *City of Myrtle Beach v. Juel Corp.*, 344 S.C. 43, 543 S.E.2d 538 (2001)(In construing statutes, words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation; statutes in derogation of common law must be strictly construed and should not be impliedly extended to cases not within their scope and purpose).

We cannot escape the conclusion, as reached by the trial court and the Court of Appeals, that there is simply nothing in the Act or the ANSI standards which requires, in foreign substance cases, a merchant's floors to have a higher degree of "slip-resistance" when wet than when dry, or which imposes upon merchants a duty to continuously inspect for foreign substances. Likewise, we find no indication the Legislature intended to abrogate the common law as regards physically disabled foreign substance slip and fall victims. Accordingly, we affirm the Court of Appeals' holding that Faculty House was properly granted summary judgment.[6]

---

6. To the extent the Court of Appeals addressed other issues in affirming the grant of summary judgment to the Faculty House, its opinion is vacated. Moreover, given our holding that the Act creates no higher duty in this situation than does the common law, we need not address Olson's issues concerning the grant of summary judgment to the University, and we affirm the grant of summary judgment to it for the reasons stated in Issue 1. *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 526 S.E.2d 716 (2000) (court can affirm for any reason appearing in the record). The Court of Appeals' discussion of the grant of summary judgment to the University is vacated.

## 2. MERITS OF FACULTY HOUSE APPEAL

The Faculty House contends the Court of Appeals erred in declining to address the merits of its appeal of the denial of its motion for summary judgment. We disagree.

■ The Court of Appeals recognized that the denial of a motion for summary judgment is not immediately appealable. *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994). In *Ballenger, supra,* we stated,

> This Court has repeatedly held that the denial of summary judgment is not directly appealable. *Willis v. Bishop,* 276 S.C. 156, 276 S.E.2d 310 (1981); *Mitchell v. Mitchell,* 276 S.C. 44, 275 S.E.2d 1 (1981); *Neal v. Carolina Power and Light,* 274 S.C. 552, 265 S.E.2d 681 (1980); *United States Fidelity & Guaranty Co. v. City of Spartanburg,* 267 S.C. 210, 227 S.E.2d 188 (1976); *Medlin v. W.T. Grant, Inc.,* 262 S.C. 185, 203 S.E.2d 426 (1974); *Greenwich Savings Bank v. Jones,* 261 S.C. 515, 201 S.E.2d 244 (1973); *Geiger v. Carolina Pool Equipment Distributors, Inc.,* 257 S.C. 112, 184 S.E.2d 446 (1971); *see also Gilmore v. Ivey,* 290 S.C. 53, 348 S.E.2d 180 (Ct.App.1986); *Associates Financial Services Co. of South Carolina, Inc. v. Gordon Auto Sales,* 283 S.C. 53, 320 S.E.2d 501 (Ct.App.1984). A majority of the other jurisdictions have reached this same conclusion. 4 C.J.S. *Appeal and Error,* § 98 (1993); 4 Am.Jur.2d Appeal and Error, § 104 (1962 & Supp.1993); 15 A.L.R.3d 899 (1967 & Supp.1993). Further, this Court has held that the denial of summary judgment is not reviewable even in an appeal from final judgment. *Raino v. Goodyear Tire,* 309 S.C. 255, 422 S.E.2d 98 (1992); *Holloman v. McAllister,* 289 S.C. 183, 345 S.E.2d 728 (1986).

313 S.C. at 476–77, 443 S.E.2d 379. *Ballenger* specifically overruled two cases which were inconsistent with this rule, and noted that "the denial of summary judgment does not finally determine anything about the merits of the case and does not have the effect of striking any defense since that defense may be raised again later in the proceedings. Therefore, an order denying a motion for summary judgment is not appealable." 313 S.C. at 477–78, 443 S.E.2d 379. *See also Silverman v. Campbell,* 326 S.C. 208, 486 S.E.2d 1 (1997)(reiterating that denial of summary judgment is not appealable, even after final judgment). The only recent exception to this

rule by this Court was in a case **prior** to *Ballenger, Davis v. Lunceford,* 287 S.C. 242, 335 S.E.2d 798 (1985), in which we allowed the appeal of the denial of summary judgment to proceed in the third appeal of a medial malpractice action which had been pending for thirteen years.[7]

We adhere to recent precedent and hold that the denial of a motion for summary judgment is not appealable, even after final judgment. To the extent the cases cited by the Court of Appeals are inconsistent, they are expressly overruled.[8] Accordingly, the Court of Appeals' refusal to consider the merits of Faculty House's appeal is affirmed.

## CONCLUSION

The grant of summary judgment on Olson's Accessibility Act claims is affirmed. We find that the Legislature did not, in enacting the Accessibility Act, intend to impose upon merchants a duty to continuously inspect and maintain floors for foreign substances, nor did it intend to create a higher standard of care in foreign substance slip and fall cases to physically disabled individuals than to other patrons. For the same reasons, we affirm the grant of summary judgment to the University.

We adhere to *Ballenger* and hold the denial of summary judgment is not appealable, even after final judgment. Accordingly, the Court of Appeals properly declined to address the merits of Faculty House's appeal.

**AFFIRMED IN RESULT.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

7. Contrary to Faculty House's suggestion, this Court's opinion in *State Farm Mutual Auto. Ins. Co. v. Bookert,* 337 S.C. 291, 523 S.E.2d 181 (1999) does not amount to a holding that the denial of summary judgment is immediately appealable. In that case, this Court reversed the grant of summary judgment to the respondents, in a declaratory judgment action, and held that respondents injuries were not covered under the policy as a matter of law.

8. *Tanner v. Florence City–County Bldg. Comm'n,* 333 S.C. 549, 553, 511 S.E.2d 369, 371 (Ct.App.1999); *Anthony v. Padmar, Inc.,* 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992); *Garrett v. Snedigar,* 293 S.C. 176, 359 S.E.2d 283 (Ct.App.1987).