708 S.E.2d 218

AJG HOLDINGS LLC, Stalvey Holdings LLC, David Croyle, Linda Croyle, Jean C. Abbott, Lynda T. Courtney, Sumter L. Langston, Dian Langston, Carl B. Singleton, Jr., Virginia M. Owens and Stoney Harrelson, Respondents,

v.

Levon DUNN, Pamela S. Dunn and Helen Sasser, Appellants.

No. 4779.

Court of Appeals of South Carolina.

Heard Sept. 16, 2010.

Decided Jan. 19, 2011.

Withdrawn, Substituted and Refiled Feb. 28, 2011.

162

Stephen P. Groves, Sr. and Thomas S. Tisdale, Jr., both of Columbia; for Appellants.

Jack M. Scoville, Jr., of Georgetown; for Respondents.

FEW, C.J.

This appeal involves restrictive covenants prohibiting commercial use of property absent the developer's approval and whether the developer's rights can be sold after the developer no longer owns any of the property. The Respondents, landowners who purchased property originally owned by developer Helen Sasser, filed this action against Levon and Pamela Dunn seeking to enforce the restrictive covenants against the

Dunns, who planned to operate a bed and breakfast on their property. The Dunns filed several counterclaims, and both parties filed motions for summary judgment. The circuit court granted partial summary judgment to Respondents, finding Sasser's attempt to sell the developer's rights to the Dunns was invalid and Respondents were entitled to judgment as a matter of law on the Dunns' counterclaims for civil conspiracy and intentional infliction of emotional distress. We affirm.

## FACTS/PROCEDURAL HISTORY

In 1978, Helen Sasser acquired land from the partition of Woodland Plantation, located along the Great Pee Dee River in Georgetown County. Sasser later subdivided the land and began selling lots. The deeds to these lots included the following restrictive covenant: "No lot shall be used for commercial purposes without express written consent from the Developer." The term "Developer" was defined as "Helen Sasser, her heirs and assigns." Sasser sold her last remaining lots in the subdivision in 1991.

In 1994, the Dunns purchased lots 9 and 10, and in 2003, they purchased lots 7 and 8. The Dunns also acquired nine acres of land outside the subdivision; these nine acres abut the Dunns' property in the subdivision, but are not governed by the subdivision's restrictive covenants. In 2005, the Dunns began renovation of an existing house (the guest house) on lots 7 and 8 in preparation for the opening of a bed and breakfast inn and wedding venue.

Tommy Abbott, the husband of Respondent Jean Abbott, wrote to the Dunns, objecting to the commercial use of their property and pointing out the restrictive covenants. He then visited the local planning and zoning commission to inquire about the building permit issued to the Dunns for the guest house. The commission later mistakenly issued a stop work order for the Dunns' work on their primary residence, but the order was lifted within a few hours. Rupert Stalvey, a member of Respondent Stalvey Holdings, LLC, contacted the Dunns' insurance agent to advise her of their commercial use of the guest house. As a result, the agent contacted the Dunns to advise them that they needed to obtain commercial

coverage for the guest house. The Dunns further allege Respondents contacted the U.S. Army Corps of Engineers to falsely report the Dunns were filling in wetlands.

Several Respondents also signed a petition to amend the restrictive covenants so that the covenants would govern the Dunns' nine acres bordering the subdivision. One of the Respondents told the Dunns that if they refused to sign the petition, the other subdivision landowners would file an action to enjoin the Dunns' commercial use of their property. The Dunns did not sign the petition.

Respondents then filed this action against the Dunns, seeking an injunction against the commercial use of the property. After receiving notice of the action, the Dunns obtained from Sasser a written assignment of any developer's rights she may have remaining in the subdivision. The Dunns also executed a document asserting that, as the assignee of Sasser's developer's rights, they consented to the commercial use of their own property. Respondents sought and obtained a temporary restraining order against the commercial use of the property, which was affirmed by this court on appeal. *AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 674 S.E.2d 505 (Ct.App.2009).

Respondents filed an amended complaint to add Sasser as a defendant and to add several additional causes of action. The Dunns and Sasser filed counterclaims for tortious interference with prospective business relations, interference with a contractual relationship, civil conspiracy, and intentional infliction of emotional distress. The parties filed cross-motions for summary judgment, and the circuit court ruled that Respondents were entitled to partial summary judgment because Sasser no longer retained any developer's rights to assign to the Dunns. Accordingly, the Dunns' subsequent execution of a written consent to commercial use was meaningless.

The circuit court also granted Respondents summary judgment on the counterclaims for interference with prospective contractual relations, civil conspiracy, and intentional infliction of emotional distress. The circuit court stated that the issue of whether the restrictive covenants run with the land and all remaining issues were matters to be decided by the factfinder. The circuit court later denied Appellants' motion to alter or amend the judgment.

## LAW/ANALYSIS

### I. Restrictive Covenants

Appellants make two distinct arguments with regard to the restrictive covenants: first, that Sasser lawfully assigned her developer's rights to the Dunns, and second, that Respondents have no right to enforce the restrictive covenants in any event. The circuit court granted summary judgment only with regard to the assignment of developer's rights, specifically holding that the second issue—whether the covenant was personal to Sasser or ran with the land (the answer to which will determine whether Respondents can enforce the covenant)—was to be determined by the fact-finder at trial.

#### A. Assignment of Developer's Rights

Appellants first argue the circuit court erred in granting summary judgment to Respondents with regard to the assignment of developer's rights. We disagree.

In *Queen's Grant II Horizontal Property Regime v. Greenwood Development Corp.*, 368 S.C. 342, 628 S.E.2d 902 (Ct. App.2006), our court set forth five conditions which must be met in order for a developer to reserve the right to amend or impose new restrictive covenants running with the land:

> (1) the right to amend the covenants or impose new covenants must be unambiguously set forth in the original declaration of covenants; (2) *the developer, at the time of the amended or new covenants, must possess a sufficient property interest in the development;* (3) the developer must strictly comply with the amendment procedure as set forth in the declaration of covenants; (4) the developer must provide notice of amended or new covenants in strict accordance with the declaration of covenants and as otherwise may be provided by law; and (5) the amended or new covenants must not be unreasonable, indefinite, or contravene public policy.

368 S.C. at 350, 628 S.E.2d at 907 (emphasis added). Focusing on the second condition of *Queen's Grant,* the circuit court found that because Sasser conveyed all the property she owned in the subdivision in 1991, she no longer retained a sufficient property interest in the subdivision to convey developer's rights to the Dunns. Therefore, the circuit court

granted partial summary judgment to Respondents, finding the Dunns' purported consent to commercial use was legally insignificant.

■ On appeal, Appellants are unable to point to any interest Sasser retained in the property other than her purported right to amend the restrictive covenants.[1] Their argument is a circular one: Sasser has a sufficient property interest in the development to allow her to reserve developer's rights because she reserved to herself developer's rights. As *Queen's Grant* makes clear, the reservation itself is allowed only when the five conditions are met, and one of those conditions is that the developer possesses a sufficient property interest in the development. For this condition to be a meaningful one, the property interest must necessarily be something more than a purported reservation of developer's rights. This is so regardless of whether the restrictive covenants run with the land or are personal to Sasser. *See McLeod v. Baptiste*, 315 S.C. 246, 433 S.E.2d 834 (1993) (holding a restrictive covenant that was personal to the grantor may not be enforced against a remote grantee when the grantor owns no real property which would benefit from enforcing the covenant).[2]

Because Sasser did not retain any property interest in the development, she did not retain developer's rights. Accordingly, we affirm the trial court's grant of summary judgment with regard to Sasser's inability to assign developer's rights to the Dunns.

## B. Denial of Appellants' Summary Judgment Motion

■ Appellants further argue that even if Sasser had no developer's rights to assign, the circuit court erred in denying

---

1. During oral arguments, Appellants argued for the first time that Sasser retained rights to use a fishing pond in the development. This argument is not preserved because it was never raised or ruled upon below, nor was it argued in the Appellants' brief. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n issue ... must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *First Savings Bank v. McLean*, 314 S.C. 361, 444 S.E.2d 513 (1994) (holding issues not argued in the brief will not be considered on appeal).

2. The Dunns are remote grantees because they did not acquire their property through Sasser.

their motion for summary judgment because Respondents have no authority to enforce the restrictive covenants. For later purchasers like Respondents to benefit from a restriction imposed by a developer, the developer must have intended for the benefit to run with the lots subsequently sold. *See Charping v. J.P. Scurry & Co.*, 296 S.C. 312, 314, 372 S.E.2d 120, 121 (Ct.App.1988). The circuit court found the issue of whether the restriction ran with the land or was personal to the developer could not be disposed of by summary judgment, but must "be decided at the trial." Because the circuit court *denied* summary judgment, we are prohibited from reviewing that ruling pursuant to *Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003).

In *Olson*, two issues were before the supreme court: (1) whether the court of appeals erred on the merits in affirming the granting of summary judgment and (2) whether the court of appeals erred in declining to address the merits of the appeal from a denial of summary judgment. Despite the immediate appealability of the first issue, the supreme court unequivocally held the denial of summary judgment was never subject to review, not in an interlocutory appeal nor even after final judgment. *Id.* Accordingly, we may not address this issue on its merits.

## II. Summary Judgment on Counterclaims

Appellants contend that summary judgment on their counterclaims for civil conspiracy and intentional infliction of emotional distress was inappropriate.[3] We disagree.

### A. Civil Conspiracy

In order to recover for civil conspiracy, the Dunns were required to demonstrate that two or more persons combined for the purpose of injuring and causing special damage to them. *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 546, 677 S.E.2d 574, 579 (2009). To prove special damages, the Dunns had to show that the acts in furtherance of the conspiracy were separate and independent

---

3. Appellants also argue the circuit court erred in granting summary judgment on their counterclaim for interference with a contractual relationship; however, the circuit court denied summary judgment on this counterclaim. Therefore, we do not address this argument.

from other wrongful acts alleged in the complaint. *See Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981). Special damages must be properly pled, or the claim for civil conspiracy will be dismissed. *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 115–16, 682 S.E.2d 871, 875 (Ct.App.2009); *see also* Rule 9(g), SCRCP (requiring special damages to be specifically stated in the pleadings).

In their pleadings, the Dunns allege that Respondents conspired "for the purpose of injuring [the Dunns] and such conspiracy has resulted in special damages, insofar as [the Dunns] have lost the quiet use and enjoyment of their property, have suffered damage to their reputations in the community, as well as other injury in an amount to be proven at trial." At the summary judgment hearing, the circuit court pointed out that these damages were no different from the damages alleged in the Dunns' other causes of action. At that point, the Dunns argued that their payment of attorney's fees and costs constituted special damages. Every litigant represented by a lawyer incurs attorney's fees and costs. However, the Dunns never pointed out to the circuit court specific attorney's fees or costs they contended qualified as special damages, nor did they seek permission to amend their counterclaim to include the specificity required by Rule 9(g). In granting summary judgment, the circuit court noted the damages the Dunns alleged did not "go beyond the damages alleged in other causes of action."

At oral argument before this court, the Dunns conceded that the damages pled in their civil conspiracy counterclaim mirrored those alleged in their interference with a contractual relationship counterclaim. They argued, however, that Respondents' contact to the Corps of Engineers caused them to incur specific attorney's fees and costs associated with the accusation the Dunns had filled in wetlands, and those expenses qualified as special damages. Because that argument was not presented to the circuit court, we may not consider it. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 (requiring issue to be raised below to be preserved for appellate review). Because the Dunns failed to plead a sufficient claim for special damages unique to the civil conspiracy claim, the circuit court properly granted summary judgment. *See* Rule 9(g), SCRCP.

## B. Intentional Infliction of Emotional Distress

In their counterclaim for intentional infliction of emotional distress, the Dunns had the burden of establishing a prima facie case as to each element of the claim in order to survive summary judgment. *Hansson v. Scalise Builders of S.C.,* 374 S.C. 352, 358, 650 S.E.2d 68, 71 (2007). To establish such a claim, the plaintiff must show the defendant: (1) "intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct"; (2) that the conduct was so outrageous it exceeded "all possible bounds of decency" and so "atrocious" it was "utterly intolerable in a civilized community"; (3) such actions actually caused plaintiff's emotional distress; and (4) the emotional distress was so severe "no reasonable man could be expected to endure it." 374 S.C. at 356, 650 S.E.2d at 70 (citing *Ford v. Hutson,* 276 S.C. 157, 276 S.E.2d 776 (1981)).

We affirm the circuit court's determination that the Dunns did not establish a prima facie case that their emotional distress was "severe such that no reasonable man could be expected to endure it." *Hansson,* 374 S.C. at 356, 650 S.E.2d at 70 (internal quotes omitted). In *Hansson,* our supreme court found that the plaintiff's testimony he lost sleep and developed a habit of grinding his teeth was not sufficient to survive summary judgment:

> To permit a plaintiff to legitimately state a cause of action by simply alleging, 'I suffered emotional distress' would be irreconcilable with this Court's development of the law in this area. In the words of Justice Littlejohn, the court must look for something 'more'—in the form of third party witness testimony and other corroborating evidence—in order to make a prima facie showing of 'severe' emotional distress.

374 S.C. at 358–59, 650 S.E.2d at 72.

Here, Levon Dunn testified that Respondents' actions caused him to develop high blood pressure and digestive problems. He also testified that his nerves were "shot" and that he took medication for his high blood pressure and nervousness. Pamela Dunn testified that she had been "emotionally ill" and that she had lost twenty pounds. Like in

*Hansson,* we find this evidence, even when viewed in the light most favorable to the Dunns, is not sufficient to survive a motion for summary judgment.

## C. Standard of Review

In affirming the circuit court's determination that the evidence is insufficient to survive summary judgment on the Dunns' counterclaims, we are mindful of our limited standard of review. We may affirm an order granting summary judgment only if "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Cowburn v. Leventis,* 366 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct.App.2005). Our supreme court has recently stated that where the burden of proof is the preponderance of the evidence, "the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.,* 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). The supreme court has never specifically applied the "mere scintilla" standard to a cause of action for civil conspiracy. However, our ruling that the Dunns failed to plead a sufficient "claim" for special damages means that any factual issue as to civil conspiracy is not "material." Thus, because our ruling is not based on the sufficiency of the evidence it is unnecessary for us to determine whether the "mere scintilla" standard applies to civil conspiracy.

■ However, we do base our ruling affirming the circuit court as to intentional infliction of emotional distress on the sufficiency of the evidence. As recognized in *Hansson,* a cause of action for intentional infliction of emotional distress carries a "heightened burden of proof." [4] 374 S.C. at 356, 650 S.E.2d at 71. Accordingly, the "mere scintilla" rule of *Hancock* does not apply to this cause of action. *See Hancock,* 381 S.C. at 330–31, 673 S.E.2d at 802–03 (stating "where a heightened burden of proof is required, there must be more than a

---

4. In this opinion we address the burden of proof as it affects the summary judgment stage. We do not address the burden of proof to be charged to the jury.

scintilla of evidence in order to defeat a motion for summary judgment"). Rather, the court must determine "whether the defendant's conduct may reasonably be regarded" as meeting the requirements of *Ford v. Hutson*. *Hansson*, 374 S.C. at 357, 650 S.E.2d at 71 (*quoting Holtzscheiter v. Thomson Newspapers*, 306 S.C. 297, 302, 411 S.E.2d 664, 666 (1991)). The court must determine whether "reasonable minds could differ as to whether [the] conduct was sufficiently 'outrageous'" and "whether [the] resulting emotional distress was sufficiently 'severe.'" *Hansson*, 374 S.C. at 358, 650 S.E.2d at 71–72. This responsibility, which the supreme court has called "a significant gatekeeping role in analyzing a defendant's motion for summary judgment," *Hansson*, 374 S.C. at 358, 650 S.E.2d at 72, requires the circuit court to determine whether a prima facie case has been established. *See Strickland v. Madden*, 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct.App. 1994) ("Initially ... the [circuit] court determines whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons might differ is the question one for the jury."). Upon careful review of the record before us, we find the circuit court exercised its gatekeeping responsibility within its discretion when it determined that the Dunns failed to establish a prima facie case for intentional infliction of emotional distress.

## CONCLUSION

Based on the reasoning above, we decline to address the circuit court's denial of summary judgment with regard to Respondents' authority to enforce the restrictive covenants. Otherwise, we affirm the circuit court's partial grant of summary judgment in all respects.

**AFFIRMED.**

LOCKEMY, J., and CURETON, A.J., concur.