**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Litchfield Plantation Association, Inc., Joseph E.
Johnston, Thomas Eckard, Carol E. Kirby, Robert F.
McMahan, Jr., and Thomas Martin Phillips, Appellants,

v.

Litchfield Plantation Company, Inc., Respondent,

and E. Scott Trotter, Intervenor.

Appellate Case No. 2012-212842

Appeal From Georgetown County
Larry B. Hyman, Jr., Circuit Court Judge

Unpublished Opinion No. 2015-UP-532
Heard September 15, 2015 – Filed November 25, 2015

**AFFIRMED**

Michael S. Seekings, Timothy W. Bouch, and Yancey
Alford McLeod, III, Leath Bouch & Seekings, LLP, all
of Charleston, for Appellants.

Mark David Neill and Mary Anna Neill, Neill Law Firm,
PA, both of Murrells Inlet, for Respondent.

**PER CURIAM:** Litchfield Plantation Association, Inc. and five Litchfield Plantation homeowners appeal the circuit court's summary judgment in favor of Litchfield Plantation Company, Inc. We affirm.

## I.     Facts and Procedural History

Litchfield Plantation Company is the developer of Litchfield Plantation, and Litchfield Plantation Association is the homeowners' association for the development. The Association's declaration of restrictive covenants (the declaration) and bylaws provide for two classes of voting rights: "Class A" rights and "Class B" rights. The Class A rights belong to the individual homeowners—they "have one equal vote for each Lot for which they hold the interest required for membership" in the Association. The Class B rights belong to the developer and allow the developer to maintain control of the Association's board of directors:

> The sole Class "B" Member shall be the [developer].
> The rights of the Class "B" Member, including the right
> to disapprove actions of the Board and any Committees,
> are specified in the relevant sections of this Declaration
> and the Bylaws. During the Class "B" share period[,] the
> Class "B" Member shall have the number of votes equal
> to all Class "A" Members plus one . . . vote.

The declaration and bylaws also provide financial obligations that the homeowners and the developer must meet to exercise their voting rights. For example, the declaration requires the developer to either pay assessments on all of its unsold lots each year or pay the "shortage"—the difference between the Association's expenditures and its total income and revenue for the year. If the developer "is more than 60 days in arrears with respect to all money owed to the Association," it cannot exercise its voting rights.

In 2010, the developer notified the homeowners it would not be able to fund the shortage as required under the declaration and bylaws. After receiving the notice from the developer, the homeowners called a special meeting and elected five new board members to replace the developer-controlled board. The Association then filed a declaratory judgment action asserting two causes of action: first, the Association asked the circuit court to rule the homeowners' takeover of the board was valid and binding on the parties; and second, the Association asked the circuit

court to declare the Class B voting period had ended and the developer's Class B rights were terminated and converted to Class A rights. The circuit court granted summary judgment in favor of the developer as to the Association's second cause of action. The court held the developer's Class B rights may be terminated in only three scenarios, none of which occurred in this case. Moreover, it held the declaration and bylaws clearly and unambiguously provide the only remedy for the developer's failure to remain current on its financial obligations is the suspension of the developer's voting rights until it pays the money it owes to the Association. Accordingly, the circuit court determined the developer's voting rights were temporarily suspended until it paid the Association the value of the shortage and two promissory notes it owed to the Association—a total of $149,981.60. The circuit court effectively denied summary judgment as to whether the developer owed the Association any additional amount and stated its decision "is not intended to, nor will it prevent the Association from pursuing its claims that it is owed" additional monies. The court did not rule on the Association's first cause of action.

The developer paid the $149,981.60 ordered by the circuit court and called a special meeting to remove the homeowners from the board and elect new board members. Two days before the meeting, the Association appealed the circuit court's order. At the special meeting, the homeowners asserted their notice of appeal acted as an automatic stay of the circuit court's order and, therefore, the developer's voting rights remained suspended. The board members determined they were still in charge of the Association and left the meeting. After the members left, the developer elected a new board. The developer filed a motion asking the circuit court to find the notice of appeal did not automatically stay its order and requesting a temporary injunction to prevent the homeowners from interfering with the developer's exercise of its voting rights and operation of the new board. The circuit court granted the developer a temporary injunction and ruled the Association's notice of appeal did not automatically stay the enforcement of the summary judgment order.

## II.    Law and Analysis

The Association raises several arguments on appeal: (1) the circuit court erred in finding the developer's Class B voting rights were temporarily suspended, rather than terminated; (2) the circuit court erred in requiring the developer to pay only $149,981.60 to reinstate its voting rights; (3) the developer breached its fiduciary duties to the Association, and the Association is entitled to equitable relief in the form of the termination of the developer's Class B voting rights; (4) the circuit

court erred in ruling the Association's appeal of the summary judgment order did not automatically stay the enforcement of the order; and (5) the circuit court erred in granting the developer a temporary injunction.

First, we hold the circuit court did not err in finding the developer's voting rights were not terminated. To determine whether the developer's voting rights may be terminated for its failure to meet its financial obligations, we must examine the declaration of restrictive covenants and the bylaws of the Association. "Restrictive covenants are contractual in nature. The language of a restrictive covenant is to be construed according to the plain and ordinary meaning attributed to it at the time of execution." *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006) (citation omitted).

The parties in this case do not dispute that the developer failed to pay the shortage or assessments as required by the declaration, and the developer conceded two promissory notes held by the Association were past due. However, the declaration and bylaws do not provide that the developer's failure to pay is a ground for termination of its Class B voting rights. Rather, the declaration provides the developer's Class B rights will be terminated and converted to Class A rights at the earliest of three possible events:

i) An initial period commencing on January 1, 2005 and ending December 31, 2010; provided, this initial period shall be automatically extended for successive periods of five (5) years, provided that in each five-year period prior to the automatic extension the [developer] has sold 100 or more lots . . . to non-affiliated Owners;

ii) When, in its discretion, the [developer] so determines; or

iii) One Hundred Eighty Days after the [developer] has sold 90% of all Lots subject to this Declaration.

None of the enumerated events occurred in this case, and neither the declaration nor the bylaws provide for termination of the Class B rights for any other reason. In fact, the remedy under the bylaws for the developer's failure to remain current

on its financial obligations is the suspension of its voting rights: "the [developer] shall not have a vote for any Lot as to which [the developer] is more than sixty (60) days in arrears with respect to all money owed to the Association." Therefore, we affirm the circuit court's ruling that the developer's Class B rights were temporarily suspended—rather than permanently terminated.

Second, we do not address the propriety of the amount the circuit court required the developer to pay to reinstate its voting rights. The circuit court's requirement that the developer pay $149,981.60 was not challenged on appeal by either party. Therefore, we need not address the requirement. The Association also argues the circuit court should have required the developer to pay an additional $837,913.94 to reinstate its voting rights. However, the circuit court's ruling in essence denied summary judgment as to that amount, and this court cannot review the denial of summary judgment. *See Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003) ("[T]he denial of a motion for summary judgment is not appealable, even after final judgment."). Accordingly, whether the developer owes an additional $837,913.94 is still at issue and must be decided at trial.

Third, nothing in the circuit court's order precludes the Association from pursuing its requested relief. The circuit court granted summary judgment only as to the $149,981.60 the developer owed to the Association and ruled—in the interim—the Association is not entitled to terminate the developer's Class B voting rights for the developer's failure to pay its financial obligations. The circuit court did not grant summary judgment or otherwise rule on the Association's breach of fiduciary duty and equitable relief arguments. It also did not rule on the Association's first cause of action—whether the homeowners' takeover of the board was valid and binding—and denied summary judgment as to any additional monies the developer may owe to the Association. Therefore, our decision is based only on the circuit court's pretrial findings as to the status of the parties, and neither the circuit court's order nor our ruling forecloses any possible element of a final judgment—including possible equitable relief for breach of fiduciary duties.

Finally, we hold the automatic stay and temporary injunction issues are moot. Because we hold the circuit court correctly determined the developer's voting rights were suspended until it paid $149,981.60—which the developer did prior to this appeal—the developer is now in control of the board. Therefore, the automatic stay is no longer at issue, and an injunction is now unnecessary. Consequently, both issues are moot, and we need not address either one. *See Seabrook v. Knox*, 369 S.C. 191, 197, 631 S.E.2d 907, 910, 911 (2006) (stating, "A moot case exists

where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court," and finding an issue moot because a ruling on the issue "would have no practical effect whatsoever").

We hold the circuit court did not err in ruling the developer's Class B voting rights were temporarily suspended, rather than permanently terminated. Accordingly, the circuit court's summary judgment order is **AFFIRMED**.

**FEW, C.J., and KONDUROS and LOCKEMY, JJ., concur.**