## 13819

### FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA v. NEW YORK TITLE AND MORTGAGE CO.
#### (KATIE W. PEGUES CASE)

(174 S. E., 402)

Before Sease, J., Richland, September, 1931.

*Messrs. Melton & Belser,* for appellant,

*Messrs. Thomas, Lumpkin & Cain, Albert Wright* and *Harold Lee,* for respondent,

April 3, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff-appellant made a loan of $25,000.00 to Katie W. Pegues, which was evidenced by her note for that sum dated October 31, 1922, and secured by her mortgage of even date covering a tract of land in Marlboro County, S. C., which mortgage was recorded in that county November 3, 1922. The defendant-respondent, in consideration of the payment of the premium and charges for the examination of the title, issued to the bank its title insurance policy by which it guaranteed and insured plaintiff bank against loss or damage not exceeding $25,000.00, which the bank should sustain by reason of defects in the title of Katie W. Pegues to, or liens or incumbrances on, the real estate covered by the said mortgage. The title company by its said policy further guaranteed that the mortgage aforesaid was a first lien on the mortgaged premises, and that there were no estates, interest, defects, or objections to the title.

Upon default by Katie W. Pegues in payment of installments of the debt, the mortgage was foreclosed and the premises sold October 6, 1930, and bid in by the plaintiff bank for $10,000.00, as appears by the report of the Clerk of the Court for Marlboro County of date October 5, 1931, which report was confirmed by order of Judge Dennis dated October 10, 1931.

In September, 1931, the bank brought this action against the Title Insurance Company to recover the sum of $16,-997.64 and interest, which liability it alleges arose in this wise:

That at the time the mortgage was given to the bank by Katie W. Pegues, and when the Title Insurance Company issued its policy guaranteeing and insuring the validity of the title of Katie W. Pegues to the mortgaged premises, there were outstanding two timber deeds, one of which conveyed to William Godfrey and J. W. Maynard all the pine and oak timber of certain dimensions on the mortgaged premises, and the purchasers were given six years from March 1, 1922, in which to remove the timber. This deed was dated December 21, 1921, and recorded January 9, 1922. The other timber deed conveyed to Cheraw Box Company all the gum and poplar timber on the mortgaged premises of a certain measurement. It was dated March 25, 1922, and gave to the purchasers three years from May 1, 1922, in which to remove the timber. This deed was recorded April 5, 1922. That the timber thus sold and which was removed from the mortgaged lands amounted in the aggregate to $16,997.64; whereby the value of the mortgaged property and the security held by the bank was greatly depreciated and was rendered inadequate. That, at the time of the sale of the mortgaged premises under foreclosure, the debt of the bank amounted to the sum of $26,611.32, no part of which has been paid except the net proceeds of the sales price, to wit, $10,000.00. That the existence of these timber deeds antedated the mortgage to the bank and constituted a

breach of the guaranty of the policy and contract issued by the Title Insurance Company and caused the loss for which the bank demanded judgment.

The defendant for answer admitted the formal allegations of the complaint; admitted the execution of the policy and the payment of the premium. It denies the allegation that the issuance of the policy was in part the consideration which induced the bank to make the loan to Katie W. Pegues, but alleges that the loan was approved, and the title policy was issued at the request of the bank. Admits the existence of the timber deeds, but alleges that the bank had knowledge of them when the title policy was issued. Admits on information the sale of the mortgaged property under foreclosure proceedings, and alleges that the small sum brought at the sale was due to the depressed condition of the country, and the land is worth more. Denies that the bank has suffered any damage and that it is entitled to recover anything under the policy issued by the Title Insurance Company.

For a second defense it was alleged that, prior to the issuance of the title policy, the bank had selected Frank Pegues, an attorney at Cheraw, to make its abstract of title on which it relied to make the loan to Katie W. Pegues; that the acts of Frank Pegues in making the abstract and closing the loan were accepted and approved by the bank; that, prior to making the abstract and loan, Frank Pegues had full knowledge of the timber deeds, he having drawn them; and that the bank through him as its agent had full knowledge of the timber deeds and failed and neglected to report them to the Title Insurance Company when the policy was applied for. Therefore liability is denied. Further in this defense it is alleged that the bank through appraisers inspected this land before making this loan, and knew, or would have known by the exercise of due prudence, that the timber deeds were outstanding. Further in this defense it is alleged that the cutting of the timber in question was in progress when the ap-

praisals and inspections were made and the bank by virtue thereof knew of the deeds; hence the provisions of the title insurance policy do not cover any loss to plaintiff.

For a third defense: On information and belief it is alleged that the bank before making the loan had its own inspectors and appraisers to inspect the land, and instructed them not to take into consideration the value of any timber on said lands; hence no loss was suffered by the bank because of these timber deeds. Further it is alleged in this defense that the value of the timber could only be ascertained at the date of the foreclosure sale; and, if any loss has occurred under the terms of the policy, it could be determined only at that time.

The plaintiff demurred to the second and third defenses, and, subject to the demurrer, gave notice to strike out these defenses and to strike certain allegations from Paragraph 6 and Paragraph 7 of the first defense.

Defendant gave notice of a motion for leave to amend its answer.

The case came on for hearing before Judge Sease March 1, 1932. He sustained the demurrer and granted the motion of plaintiff to strike, and granted leave to defendant to amend its answer by setting up defenses 4 and 5.

The case proceeded to trial, and a great deal of testimony was taken which revolved mainly around the issues made by the complaint and the answer as amended by the fourth and fifth defenses.

The plaintiff moved for directed verdict on the question of liability, leaving the question of the amount of the damages to be fixed by the jury. The defendant moved for the direction of a verdict on the whole case. Both motions were refused, and the jury found for defendant.

The transcript of record is a voluminous document; the Court is of the opinion that it need not consider most of it; for this reason: If the trial Judge was right in sustaining plaintiff's demurrer, and there is no appeal from his order,

then the defense rested mainly upon the grounds set up in the fourth and fifth defenses of the answer, which in our judgment raise questions of law to be decided by the Court. Indeed, the fourth defense is closely related to the matter contained in the second defense to which the demurrer went, and which had been sustained.

The demurrer challenged the second and third defenses on the ground that they did not state facts sufficient to constitute a defense.

The second defense was, in effect, that Frank Pegues, the lawyer who made the abstract of title, was the agent and attorney of the bank, that he had knowledge of the timber deeds, and the bank had such knowledge through him.

It would appear that the Title Insurance Company is not in position to hold this contention. The policy which it issued to the bank states in explicit language that it is issued "in consideration of the payment of its premiums and charges for examination of title." It further appears that the application for the policy was not made by the bank, but by Equitable Trust Company, an associate of the New York Title & Mortgage Company, whose agent and attorney certified that the title was good. The Equitable Trust Company also certified that the original abstract of title prepared by B. F. Pegues *was held by it and would be submitted on call to the Title Company for inspection.*" (Italics added.) Manifestly, the Title Company, in seeking to satisfy itself whether this risk was a desirable one, did not rely upon any investigation the bank may have made as to the value of the property or the validity of the title, but relied upon the representations of its own agent or associate, the Equitable Trust Company. If it were conceded that B. F. Pegues was the agent of the bank in making the abstract of title, it is, nevertheless, true that the Title Company did not depend upon that abstract but upon the opinion and advice of the Equitable Trust Company that the title was good.

Was B. F. Pegues the attorney of the bank? When the application for a loan is made to the bank, the prospective borrower is required to furnish an abstract of title to the land which he offers as security for the loan. Is the person who prepares the abstract of title the agent and representative of the person who seeks a loan and who is required to furnish abstract?

It is a provision of all applications for loan from the Joint Stock Land Bank that the applicant states: "I agree in making this application that any expense incurred by your Bank, or representative thereof, for inspecting the property and charges of counsel for examining abstract will be borne by me. * * * *Also that a complete and acceptable abstract and necessary continuation thereof, and such other evidences of title as may be necessary are to be furnished by me at my expense.*" (See transcript of record, page 21.) That was the language of Mrs. Katie W. Pegues in her application for loan. The abstract of title was prepared by B. F. Pegues for her. Mr. Gamble, an officer of the bank, was being examined. See page 21 of the transcript of record:

"Q. Was an abstract of title furnished in this case? A. Yes, sir.

"Q. And what other evidence of title did you have? A. Title insurance policy."

It is difficult to see how in the light of this testimony (uncontradicted) it can be held that B. F. Pegues was the attorney and agent of the bank, and that the bank is therefore chargeable with the knowledge which he may have had of the existence of the timber deeds. One cannot escape the inference that he was the attorney and agent of the applicant for the loan, and in the interest of procuring it made no reference to the timber deeds.

The trial Judge summed up correctly the situation when he said, in passing on the demurrer: "I take it that notice—going back to the second and third defenses—both of these

successive alleged notices to the bank, that is no defense. The notice is no defense. That is the very thing the policy seeks to insure against. Besides the defendant had full notice of these two timber deeds; because they are on record, *and the mistake or negligence of Mr. Pegues, the attorney, is exactly what the Title Company undertook to insure against.*" (Italics added.)

We concur in this opinion of the trial Judge, and find, therefore, that he was justified in sustaining the demurrer.

Having sustained the demurrer, he granted leave for defendant to amend its answer by setting up defenses 4 and 5.

What was the effect of this?

These defenses were in effect, if not in exact language, the defenses set up in defenses second and third, which had gone out on demurrer. They allege, as in the overruled defenses, that plaintiff had notice of the timber deeds, and failed to notify defendant in writing, or otherwise, within thirty days after learning of the same, as required by the provisions of Paragraph 6 of the conditions and stipulations of the policy; and that plaintiff had knowledge of the existence of the above-mentioned timber deeds, and the cutting and removing of timber thereunder, and failed to furnish a statement in writing, or otherwise, of the alleged loss or damage within sixty days after such loss or damage occurred, as required by the provisions of Paragraph 7 of the conditions and stipulations of the policy.

As the trial Judge had said, the defendant likewise had notice of these things, and it was therefore immaterial whether the plaintiff gave it notice of what was going on. Nevertheless, he allowed the amendments, and around the issues thus presented the legal battle raged, and toward them the great mass of testimony was directed. The plaintiff objected to the introduction of this testimony and moved to strike it out. The motion should have been granted.

The pertinent provisions of Section 6 of the conditions and stipulations are as follows: "It shall be the duty of the party guaranteed and the owner of said indebtedness within thirty days after learning of any claim of title, encumbrance or defect not excepted in this policy, *and before payment or settlement of the same to notify the Company in writing of the existence of such claim, encumbrance or defect, and in case any suit or proceeding shall be commenced founded on any such claim, encumbrance or defect, the Company shall have the right at its option to pay the owner of such indebtedness the amount remaining unpaid thereon, etc.*" (Italics added.)

This was a written instrument; it was the duty of the Court to construe it. There is only one reasonable construction deducible from the language quoted, viz., that the claim contemplated is one against the bank demanding something of it, and growing out of the mortgage contract.

The Court erred in permitting the introduction of evidence relative to such plea and in submitting such issue to the jury.

The fifth defense is predicated upon Section 7 of the conditions and stipulations of the policy, which is in these words: "A statement in writing for any loss or damage for which it is claimed this Company is liable shall be furnished to the Company within sixty days after such loss or damage, and no right of action shall accrue until thirty days after such statement shall have been furnished, and no recovery shall be had under this policy unless action shall be commenced thereunder within one year after the expiration of said last mentioned period of thirty days; and a failure to furnish such statement of loss or damage and to commence such action within the times hereinbefore specified shall be a conclusive bar against the maintenance of any action under this policy."

This question might well be disposed of by the statement that the respondent has utterly failed to show when the ap-

pellant learned of its loss by the removal of the timber. Itself it asserts that appellant could not have known of it until after the sale of the mortgaged property. This was made October 6, 1930. The report of the sale was made October 5, 1931, and the order of confirmation of sale was made October 10, 1931. Appellant did not learn of the timber deeds until May, 1931, and there is no proof of when it ascertained the amount of timber removed and the value thereof.

It is the settled law of this jurisdiction—indeed, the rule is almost universal—that insurance contracts are to be construed against the insurer. That rule applies to title insurance contracts, as well as to other insurance contracts.

"Title policies are subject to rules generally applicable to contracts of insurance.

"Title policy being drawn by insurer, doubtful questions should generally be decided in favor of assured." *Marandino v. Lawyers' Title Insurance Corporation,* 156 Va., 696, 159 S. E., 181.

Appellant, after learning, in May, 1931, of the existence of the timber deeds, was, so far as the record shows, still ignorant of the amount and value of the timber removed from the mortgaged premises. It would have been a useless thing to notify the Title Company of the existence of these deeds without also notifying them of appellant's claim, the nature and amount of it. The trial Judge found and declared, when passing upon the demurrer, that the Title Company had knowledge of the existence of the deeds.

"It is settled, upon reason and authority, that knowledge by the grantee of a defect in his grantor's title is no defense to an action on the grantor's warranty of the title." *Sanders v. Boynton,* 112 S. C., 62, 98 S. E., 854, 856.

"Notwithstanding right to indemnity under title insurance policy had accrued, insured's ignorance of facts justifying indemnity was excuse for not making immediate demand." *Title Insurance Co. v. Industrial Bank,* 156 Va., 322, 157 S. E., 710, 711.

The action was begun in September, 1931. The plea of respondent that the action is barred because the appellant did not give it the notice prescribed in Section 7 of the conditions and stipulations of the policy within the times prescribed therein, and did not commence the action within the time therein fixed, is not supported by the evidence, and is untenable under the law.

Our conclusion is that his Honor, the trial Judge, should have granted the motion of appellant that he direct a verdict in its favor on the question of liability, and should have submitted to the jury the question of loss or damage.

This conclusion renders it unnecessary to consider the exceptions touching upon the introduction of testimony, over objections, the refusal of the motions to strike out testimony, and touching alleged errors in the charge, and in refusal to charge.

It is the judgment of the Court that the judgment of the Circuit Court be reversed and the case remanded to that Court, with directions to direct a verdici for the plaintiff on the question of liability, and submit to the jury the question of loss or damage.

MR. CHIEF JUSTICE BLEASE, MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. JUSTICE CARTER did not participate.