0242

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent, v. WINYAH NURSING HOMES, INC. and E. Stone Miller, and All Other Directors, Shareholders, Trustees and Successors in Interest to Winyah Nursing Homes, Inc., Appellants.

(320 S. E. (2d) 464)

Court of Appeals

*Donald A. Harper,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for appellants.*

*E. Crosby Lewis* and *Frank S. Potts, Lewis, Lewis & Robinson,* Columbia, *for respondent.*

Heard May 16, 1984.

Decided Aug. 29, 1984.

CURETON, Judge:

This action was commended by respondent, South Carolina Department of Social Services (DSS), against Winyah Nursing Home, a corporation, appellant E. Stone Miller, individually, and other surviving directors, shareholders, trustees and successors in interest of the Nursing Home. DSS alleges that in March, 1979, it rendered a final agency decision finding the Nursing Home liable to DSS for medicaid overpayments of $18,028.00. No appeal was taken from the decision. It now seeks to have a 1975 dissolution of the corporation voided and the final agency decision enforced against the Nursing Home and its assets which are alleged to be in the hands of Miller, a surviving director, shareholder and successor in interest to the property of the corporation.

The undisputed facts are that in 1972 and 1973, DSS and the Nursing Home entered into contracts whereby the Nursing Home was to furnish skilled nursing care to persons entitled thereto on certain terms and conditions. In return, DSS was to pay the Nursing Home in accordance with a formula stated in the contracts. On January 30, 1974, DSS advised the Nursing Home that it proposed to make certain cost adjustments to its

contracts with the Nursing Home due to a review of cost documents submitted to DSS by the Nursing Home. The result of these adjustments would have meant DSS overpaid the Nursing Home for the services it rendered during the contract periods 1972 and 1973 and the Nursing Home had to reimburse it. The Nursing Home responded to DSS's proposed adjustments by denying it owed DSS any monies.

In October, 1975, the corporate Nursing Home dissolved. As a result, Miller became the owner of most, if not all, of its assets. Unaware of the dissolution, DSS, in November of 1978, advised Miller as an officer and director of the Nursing Home that it had determined that the Nursing Home had been overpaid $21,052.00, and reimbursement was again demanded. Miller was advised that if he disagreed with this finding, he could appeal pursuant to DSS regulations. Miller appealed the agency's finding. After an agency "fair hearing" in which Miller, but not the Nursing Home, was represented by counsel, DSS rendered its final agency decision requiring the Nursing Home to repay DSS the sum of $18,028.00. No appeal was taken from this decision.

In September, 1979, DSS instituted this action to enforce its decision. Miller demurred to the complaint. The demurrer was overruled by the trial judge and an appeal was taken to the South Carolina Supreme Court. The Supreme Court affirmed the order of the trial court. *South Carolina Department of Social Services v. Winyah Nursing Home, Inc.*, 276 S. C. 490, 280 S. E. (2d) 59 (1981). Thereafter, Miller filed an answer to DSS's complaint in his individual capacity, but the Nursing Home did not answer and affidavit of default was filed. The answer of Miller denied that he owed DSS any monies and affirmatively alleged that DSS's action was barred by the applicable statute of limitations, the survival statute. (Code Section 33-21-220) and equitable principles of waiver, laches and estoppel. At the conclusion of all testimony, the trial judge concluded that there was no issue of fact to be submitted to the jury and directed a verdict for DSS. This appeal followed.

The issues on appeal are whether the trial court committed error in finding as a matter of law that (1) the statute of limitations did not bar DSS's action, (2) the survival statute did not bar DSS's action, (3) waiver, laches and estoppel did

not preclude DSS's suit, and (4) DSS was entitled to a directed verdict.

We first note that although DSS's complaint alleges the unappealed final agency adjudication against the Nursing Home in March, 1979, as *res judicata* to relitigation of the issues of liability and the amount owed and simply seeks enforcement of the decision, this action was tried, for the most part, as a breach of contract action. Therefore, Miller's affirmative defenses are directed toward defending against a breach of contract action.

Miller first contends that this action is barred by the six-year statute of limitations applicable to contract actions. We have already noted that the action is one for the enforcement of a final agency determination. The action was brought some eight months after the final adjudication under the Administrative Procedures Act. Section 1-23-310, *et seq.*, South Carolina Code of Laws (Supp. 1983). We find no error.

We point out, however, that if this were an action for breach of the contracts between the Nursing Home and DSS, the twenty-year limitations period provided in Section 15-3-520(2) of the South Carolina Code of Laws of 1976 would apply. The evidence reveals that the contracts are sealed instruments. The attestation clauses state that "the parties hereto have set their hands and seals." The notation "L.S." follows the signatures of the agents for both DSS and the Nursing Home. Clearly, the two contracts are sealed instruments. *See* S. C. Code Ann. Section 19-1-160 (1976, as amended); *Wallingford v. Western Union Telegraph Co.*, 60 S. C. 201, 38 S. E. 443 (1901); *Cook v. Cooper*, 59 S. C. 560, 38 S. E. 218 (1901). This action, commenced in 1979, is well within the twenty-year limitations period applicable to sealed contracts.

We next discuss whether the so-called survival statute barred this action. Section 33-21-220(a) requires that after dissolution of a corporation, any party having a claim against the corporation commence an action thereon within two years from the dissolution or have the claim barred. Winyah Nursing Home was dissolved in 1975 and this suit was commenced in 1979, clearly beyond the two-year period. Dissolution was admittedly under the provisions of Chapter 21 of the Code (Section 33-21-10, *et seq.*).

Section 33-21-60(b) mandates that immediately subsequent to filing with the Secretary of State its intent to dissolve, the corporation shall cause notice of the filing to be mailed to each *known creditor* of the corporation and to the South Carolina Tax Commission. The corporation is also required to publish such notice in a newspaper.

After all the evidence had been presented, the trial ■ judge held as a matter of law that DSS was a "known creditor" within the meaning of the statute. We agree. This holding is dictated by *Bonsall v. Piggly Wiggly Helms, Inc.,* 275 S. C. 593, 274 S. E. (2d) 298 (1981). In *Bonsall,* our Supreme Court held that a tort claimant who had notified a corporation about her slip and fall claim and had been contacted by the corporation's insurer was a known creditor to whom the corporation was required to give notice of dissolution. Again in *Moultis v. Degen,* 279 S. C. 1, 301 S. E. (2d) 554 (1983), the Court, quoting *Coronet Manufacturing Corp. v. May Furniture Co.,* 31 Ohio Misc. 131, 282 N. E. (2d) 588 (1971), defined a creditor as "the owner of any right of action against another whether a claim or legal right for damages arising out of contract or for a tort."

The evidence before us reveals that in 1974, DSS advised the Nursing Home of its contractual overpayments and received a reply from the Nursing Home denying the claim. The unresolved claim at the time of the 1975 dissolution of the Nursing Home made DSS a known creditor of the Nursing Home and required that it be notified of the intended dissolution.

Failure to strictly comply with the mandates of the ■■ dissolution statutes effectively continues the corporation with respect to creditors whose rights are prejudiced by the noncompliance. *See Bonsall v. Piggly Wiggly Helms, Inc., supra;* 19 C.J.S. *Corporations* Sections 1644, 1684 (1940); 19 Am. Jur. (2d) *Corporations* Sections 1596-1600 (1965); 1963-64 Att'y Gen. Op. No. 1631 at p. 60. Since the evidence does not show that notice was given to DSS pursuant to statute, the *de jure* corporate dissolution was void as to DSS and its claim survives.

We next examine whether Miller may raise, in bar of ■■ this action, the defenses of laches, waiver and estoppel.

He contends that the delay of DSS in pursuing recoupment of the funds from early 1974 to 1979 precludes their maintenance of this action. We disagree.

This is an action to enforce an unappealed final agency adjudication. The doctrine of *res judicata* applies to the decisions of state agencies, barring the relitigation of issues which were or could have been raised before the administrative hearing body. *Earle v. Aycock,* 276 S. C. 471, 279 S. E. (2d) 614 (1981); *see United Merchants and Manufacturers v. South Carolina Electric and Gas Co.,* 113 F. Supp. 257 (D.S.C. 1953), *aff'd,* 208 F. (2d) 685 (4th Cir. 1953); *Derrick v. Gaston School District of Lexington County,* 172 S. C. 472, 174 S. E. 431 (1934); *Lawlor v. National Screen Service Corp.,* 349 U. S. 322, 75 S. Ct. 865, 99 L. Ed. (2d) 1122 (1955); *Densmore v. Brown,* 83 Ga. App. 366, 64 S. E. (2d) 78 (1951). We therefore find that the unappealed DSS decision bound the Nursing Home and its privies on all issues that were or could have been addressed at the fair hearing. *Ford v. Watson,* 316 S. E. (2d) 429 (S. C. App. 1984).

In determining whether the doctrine of *res judicata* is applicable to Miller, we must first decide whether Miller was in privity with the Nursing Home when he appeared at the fair hearing. The evidence shows that Miller had been an officer and director of the corporation and owned at least niney-nine percent of its stock. He had also at that time received title to the corporation's real estate and was assignee of a note from Winyah Extended Care Center, Inc. to the corporation and a lease from the Nursing Home to Winyah Extended Care Center, Inc. As grantee and assignee of presumably most of the Nursing Home's assets, we have no problem finding privity. *See Heaton v. Southern Railway Co.,* 119 F. Supp. 658 (D.S.C. 1954); *First National Bank of Greenville v. U. S. Fidelity & Guaranty Co.,* 207 S. C. 15, 35 S. E. (2d) 47 (1945) (privies are persons who have mutual or successive relationships to the same property rights and were legally represented at trial); *State v. Broad River Power Co.,* 177 S. C. 240, 181 S. E. 41 (1935) (vendee is in privity with its vendor).

Miller does not argue that he did not have the opportunity to argue these defenses at the fair hearing or that he could not have asserted these defenses in an appeal of the Agency's decision to the circuit court. In answering the allegation in DSS's complaint that its decision was "final and not subject to further review," Miller states that the question of the reviewability of the Agency's decision is

one of law. We agree and hold that Miller was bound by the Agency's decision, having failed to raise the questions of waiver, estoppel and laches concerning DSS's right of recoupment and the amount of recoupment.

Of course if it is Miller's contention that there is evidence to support the defenses of laches, waiver and estoppel with respect to this action to enforce the March, 1979, agency decision, the assertion is clearly without merit. We are unable to discern any prejudicial change of position by Miller, any affirmative act by DSS that misled Miller, or any injustice Miller would suffer by permitting DSS to enforce its claim at this time.[1] *See Central Production Credit Association v. Page*, 268 S. C. 1, 231 S. E. (2d) 210 (1977); *Jost v. Equitable Life Assurance Society of U. S.*, 271 S. C. 492, 248 S. E. (2d) 778 (1978); 27 Am. Jur. *Equity* Section 162 (1966).

Finally, we discuss the question of whether the trial judge erred in entering a judgment for DSS for $18,028.00. We have determined that DSS's decision bound Miller as to the amount. We must now decided whether there is a basis for enforcing the DSS order against Miller as a surviving director and officer of the Nursing Home who admittedly received much of its assets in the dissolution. After dissolution of a corporation and distribution of its assets, an unpaid creditor not otherwise barred from pursuing his claim, may recover from a shareholder only to the extent of assets received by the shareholder in the distribution. *Fidelity Trust Co. v. D. T. McKeithan Lumber Co.*, 212 F. 229, (D. S. C. 1914), *aff'd*, 223 F. 773 (4th Cir. 1915); 19 C. J. S. *Corporations* Section 1760 (1940); 16A *Fletcher Cyclopedia of Corporations* Section 8173 (Perm. Ed. 1979). DSS's complaint prays for judgment against all defendants to the action "to the extent of the value of the assets and/or proceeds [they] received from the said dissolution." The trial judge made no finding, and indeed the record does not disclose, that Miller received assets from the dissolution valued at $18,028.00. DSS was not entitled to an unconditional judgment against Miller, but a judgment only to the extent he received corporate assets. *Fidelity Trust Co. v. D. T. McKeithan Lumber Co., supra.* Further, DSS may only

---

[1] It seems to us that Miller was essentially the sole stockholder in the corporation before dissolution and now is owner of essentially all its assets.

receive the relief prayed for in its pleadings. *Reid v. Reid*, 280 S. C. 367, 312 S. E. (2d) 724 (S. C. App. 1984); *Gainey v. Gainey*, 279 S. C. 68, 301 S. E. (2d) 763 (1983). We therefore hold that the trial judge erred in entering judgment for DSS and against Miller for $18,028.00.

Accordingly, this case is remanded for a determination of the amount of assets received by Miller. The trial court shall then enter judgment for DSS and against Miller to the extent Miller received assets in the dissolution, but not to exceed the sum of $18,028.00, plus costs.

Remanded.

SHAW and BELL, JJ., concur.