781 S.E.2d 126

**Thomas P. and Desiree J. LYONS, Respondents,**

**v.**

**FIDELITY NATIONAL TITLE INSURANCE COMPANY as successor by merger to Lawyers Title Insurance Corporation, Bobby Gene Martin, and The Security Title Guarantee Corporation of Baltimore, Defendants,**

**Of whom The Security Title Guarantee Corporation of Baltimore is the Appellant.**

**Appellate Case No. 2013–002137.**
**No. 5365.**

Court of Appeals of South Carolina.

Heard Nov. 3, 2014.
Decided Dec. 2, 2015.
Rehearing Denied Jan. 21, 2016.

116

Ray Coit Yarborough Jr., of Florence, for appellant.

David K. Haller, of Haller Law Firm, of Charleston, for respondents.

McDONALD, J.

The Security Title Guarantee Corporation of Baltimore (Security Title) appeals the circuit court's grant of partial summary judgment in favor of Thomas P. Lyons and Desiree J. Lyons (collectively, the Lyons). Security Title argues the circuit court erred in (1) finding the Lyons' claims were not barred by the statute of limitations; (2) holding a county "no-build" resolution appeared in the public record and was avail-

able for title examination when the policy was issued; (3) holding a zoning resolution imposing a land restriction was a defect in title triggering coverage under the policy; (4) finding the Lyons did not fail to mitigate their damages; and (5) determining the date of loss. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The real property (the Property) at issue is a residential lot located in Horry County, which previously held a mobile home with numerous extensions and additions. Unbeknownst to the Lyons at the time of their purchase, the Property had been encumbered since 1932 by a properly recorded easement allowing for the construction and maintenance of the Intracoastal Waterway. Moreover, the Property has been subject to a county "no-build" resolution since 2003.

The Lyons purchased the Property in two separate transactions. On May 5, 2005, they purchased a lot (Lot 1) for $240,000, along with a title insurance policy from Lawyers Title Insurance Corporation (Lawyers Title).[1] On October 28, 2005, the Lyons purchased a portion of a lot (Lot 2) adjacent to Lot 1 for $100,000. In conjunction with this transaction, they purchased a title insurance policy from Security Title.[2] Lots 1 and 2 were subsequently combined into the Property at issue, which is shown as "Lot 1" on a plat dated August 24, 2005, and recorded with the Horry County Register of Deeds.

On July 3, 1930, Congress enacted the River and Harbor Act, which provided for the construction of the Atlantic Intracoastal Waterway.[3] In 1931, our General Assembly passed an act to provide for rights-of-way for the construction project.[4] On August 17, 1932, the governor executed a deed to rights of way (Spoil Easement), which granted the federal government the following:

---

1. Fidelity National Title Insurance Company is the successor by merger to Lawyers Title. Fidelity is a defendant in the underlying action but is not a party to this appeal.

2. The title insurance policies are substantially identical.

3. *See* River and Harbor Act, ch. 847, § 2, 46 Stat. 945 (1930) (current version at 33 U.S.C. § 426 (2001)).

4. *See* Act No. 163, 1931 S.C. Acts 225–26 (current version at S.C.Code Ann. § 3–5–20 (1986)).

[T]he perpetual right and easement to enter upon, excavate, cut away and remove any and all of the tracts hereinafter described as composing a part of the canal prism,[5] as may be required at any time for construction and maintenance of the said Inland Waterway ... and ... to enter upon, occupy, and use any portion of ... the spoil disposal area [6] ... [and] to deposit on the ... spoil disposal area, or any portion thereof, any and all spoil or other material excavated in construction and maintenance of the aforesaid waterway and its appurtenances.

The Spoil Easement was filed in the Horry County Register of Deeds on September 17, 1932.

In 1983, the Army Corps of Engineers began managing the Spoil Easement. Horry County's obligations were established in a tri-party agreement dated December 8, 1982. On or about November 4, 2003, the Horry County Council adopted Resolution R–143–03 (the no-build resolution), providing that,

Horry County Council resolved to authorize the issuance of building permits to repair, remodel or replace existing structures within the spoil easements along the Intracoastal Waterway, but to otherwise continue the policy of denying building permits in this area. Mobile homes within the spoil area may only be replaced with mobile homes.

Horry County Res. 143–03. In May 2011, Horry County refused to issue the Lyons a building permit due to the no-build resolution. The Lyons assert that when their building permit was refused, "they learn[ed] for the first time that there is an easement on the property[,] which essentially makes their property useless." Thereafter, they removed the existing mobile home structure from the Property and listed the Property for sale for $539,000.

The Lyons subsequently submitted claims against Fidelity and Security Title under their title insurance policies. On October 11, 2011, Security Title denied the Lyons' claim and rejected their $80,000 demand. The Lyons filed an action for breach of contract and bad faith failure to pay insurance

---

5. The Property abuts the Intracoastal Waterway and is part of the canal prism.

6. The Property is part of the spoil disposal area.

claims on July 5, 2012, followed by an amended summons and complaint on July 19, 2012. The Lyons subsequently moved for partial summary judgment on December 20, 2012.

At the May 15, 2013 summary judgment hearing, the Lyons brought to the circuit court's attention that United States District Court Judge R. Bryan Harwell had granted partial summary judgment for a neighboring insured on the liability question in a similar case. *See Whitlock v. Stewart Title Guar. Co.*, 2011 WL 4549367 (D.S.C. Oct. 3, 2011).[7] The circuit court granted the Lyons' motion for partial summary judgment by order filed July 12, 2013. Security Title moved to reconsider on July 26, 2013; the circuit court denied the motion to reconsider on August 9, 2013. This appeal followed.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court under Rule 56, SCRCP." *Wachovia Bank, N.A. v. Coffey*, 404 S.C. 421, 425, 746 S.E.2d 35, 37 (2013) (quoting *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010)). The circuit court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Wachovia Bank*, 404 S.C. at 425, 746 S.E.2d at 38 (quoting *Quail Hill*, 387 S.C. at 235, 692 S.E.2d at 505). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Quail Hill*, 387 S.C. at 235,

---

7. The question of the applicable date for establishing the measure of damages was certified to the South Carolina Supreme Court, which concluded that when "faced with the task of construing an insurance policy, and in the presence of an ambiguity we are constrained to interpret it most favorably to the insured. In this case, the date the property was purchased is the proper valuation date." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 616, 732 S.E.2d 626, 629 (2012).

692 S.E.2d at 505 (quoting *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 378, 534 S.E.2d 688, 692 (2000)).

## LAW/ANALYSIS

### I. Statute of Limitations

■ Security Title argues that the "mere affixation of a corporate seal" does not make the title policy a "sealed instrument;" thus, the three-year statute of limitations applies to bar the Lyons' claims. We disagree.

■ "Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs." *Moates v. Bobb,* 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996). "One purpose of a statute of limitations is 'to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his rights.'" *Id.* (quoting *McKinney v. CSX Transp., Inc.,* 298 S.C. 47, 49–50, 378 S.E.2d 69, 70 (Ct.App.1989)). "Another purpose of the statute of limitations is to protect potential defendants from protracted fear of litigation." *Id.* "The cornerstone policy consideration underlying statutes of limitations is the laudable goal of law to promote and achieve finality in litigation." *Carolina Marine Handling, Inc. v. Lasch,* 363 S.C. 169, 175, 609 S.E.2d 548, 552 (Ct.App.2005). "Statutes of limitations are, indeed, fundamental to our judicial system." *Id.*

■ South Carolina Code section 15–3–530(1) provides for a three-year statute of limitations for "an action upon a contract, obligation, or liability, express or implied, excepting those provided for in Section 15–3–520." S.C.Code Ann. § 15–5–530(1) (2005). Under the discovery rule, "the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Dean v. Ruscon Corp.,* 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). "The discovery rule applies to breach of contract actions." *Prince v. Liberty Life Ins. Co.,* 390 S.C. 166, 169, 700 S.E.2d 280, 282 (Ct.App. 2010). "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the

date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App.1998).

The Lyons asserted below that when their building permit was refused in May 2011, "they learn[ed] for the first time that there is an easement on the property[,] which essentially makes their property useless." However, the circuit court ruled there was evidence that the Lyons knew or should have known of the Spoil Easement as early as October 26, 2006, when they received a letter from the Army Corps of Engineers informing them of a disposal easement held by the United States on or adjacent to the area where they planned to construct a dock. The Lyons had previously received a substantively identical letter dated March 19, 2006.

■ South Carolina Code section 15–3–520(b) provides for a twenty-year statute of limitations for "an action upon a sealed instrument, other than a sealed note and personal bond for the payment of money only whereon the period of limitation is the same as prescribed in Section 15–3–530." S.C.Code Ann. § 15–3–520(b) (2005). "We adhere to our general three-year statute of limitations for most contract actions and acknowledge the availability of the twenty-year limitations period where the contract clearly evidences an intent to create a sealed instrument." *Carolina Marine*, 363 S.C. at 175, 609 S.E.2d at 552. We acknowledge that South Carolina has not specifically considered whether an insurance policy containing a seal is a sealed instrument under section 15–3–520(b).

A sealed instrument is defined as "an instrument to which the bound party has affixed a personal seal, [usually] recognized as providing indisputable evidence of the validity of the underlying obligations." *Sealed Instrument*, BLACK's LAW DICTIONARY (9th ed.2010). A seal is defined as "an impression or sign that has legal consequences when applied to an instrument." *Id.; see also* 68 Am. Jur. 2d *Seals* § 6 (2014) ("Devices or impressions held to be seals include . . . a printed impression of a seal."). The prevailing view is that "the seal may consist of any substance affixed to the document or the use of an impression such as that customarily used by notaries and corporations, or the use of any other mark, work, symbol,

scrawl, or sign intended to operate as a seal." 1 WILLISTON ON CONTRACTS § 2:4 (2007).

For purposes unrelated to the applicable statute of limitations, our supreme court addressed whether a particular deed was a sealed instrument in *Cook v. Cooper,* 59 S.C. 560, 38 S.E. 218 (1901). The deed at issue in *Cook* lacked a seal "upon its face." *Id.* at 562, 38 S.E. at 219. However, it presented the following features: (1) an attestation clause; (2) the word "seal" was adjacent to the grantor's signature; and (3) the deed concluded with "Signed, Sealed and Delivered in the [presence] of [names of witnesses]." *Id.* The *Cook* court, relying in part on the predecessor to section 19-1-160, found that the parties intended to create a sealed instrument. *Id.*

In *Stelts v. Martin,* 90 S.C. 14, 72 S.E. 550 (1911), the court addressed the statute of limitations applicable in a foreclosure action. In *Stelts,* the validity of a mortgage was at stake. Our supreme court explained the following:

> We are unable to agree with the Circuit Judge that a paper, in form a mortgage and *lacking a witness or a seal or other formal requisite of a legal mortgage,* but valid between the parties as an equitable mortgage, is barred by the statute of limitations six years after its maturity. The paper is . . . a sealed instrument importing an obligation to pay money and a lien as between the obligor and obligee upon the land to secure payment. This being so . . . the [action falls] under [the predecessor to code section 19-1-160,] providing a limitation of twenty years. . . .

*Id.* at 17, 72 S.E. at 551-52 (emphasis added).

In *South Carolina Department of Social Services v. Winyah Nursing Homes, Inc.,* this court concluded that although the contract at issue did not include a seal, the language of the contract manifested the parties' intent to create a sealed instrument. 282 S.C. 556, 561, 320 S.E.2d 464, 467 (Ct.App. 1984). "The attestation clauses state that 'the parties hereto have set their hands and seals.' The notation 'L.S.' follows the signatures of the agents for both DSS and the Nursing Home." *Id.* "L.S. is an abbreviation for *locus sigilli,* which means 'the place of the seal; the place occupied by the seal of written instruments.' L.S. usually appears on documents in place of, and serves the same purpose as, a seal." *Carolina*

*Marine*, 363 S.C. at 174, 609 S.E.2d at 551 (citing *Locus Sigilli*, BLACK'S LAW DICTIONARY (6th ed.1990)).

Likewise, in *Treadaway v. Smith*, this court found the parties to a separation agreement (incorporated into a 1974 Haitian divorce) intended to create a sealed instrument. 325 S.C. 367, 378, 479 S.E.2d 849, 855 (Ct.App.1996), *abrogated by Carolina Marine Handling, Inc. v. Lasch*, 363 S.C. 169, 609 S.E.2d 548 (Ct.App.2005). The parties' agreement stated, "IN WITNESS WHEREOF, the parties have hereunto set their respective Hands and Seals in quadruplicate as of the day and year first above written" and "SIGNED SEALED AND DE-LIVERED IN THE PRESENCE OF [signatures of parties and witnesses]." *Id.* This court concluded that the plaintiff's action, which sought to enforce a provision of the agreement in which the defendant agreed to pay the children's college expenses, was governed by the twenty-year statute of limitations. *Id.*

However, in *Carolina Marine*, this court concluded that the sophisticated parties to a commercial lease agreement did not intend to create a sealed instrument. 363 S.C. at 174, 609 S.E.2d at 551. Thus, the lease at issue was not sealed, and the general three-year statute of limitations applied to the tenant's counterclaim for breach of contract against a subtenant. *Id.* Although the lease contained an attestation clause reading "IN WITNESS WHEREOF, the parties have hereunto set their hands and seals," the lease did not contain an actual seal, the letters "L.S.," referring to the place where a seal would be affixed, or such a phrase as "signed, sealed, and delivered." *Id.* at 174–75, 609 S.E.2d at 551–52. This court cautioned, "Were we to construe this boilerplate attestation clause, *by itself*, as requiring a finding of intent to create a sealed instrument in an otherwise non-sealed instrument, we would likely transform the twenty-year statute of limitations into the standard period of limitations for contract actions in this state." *Id.*

In the present case, we find Security Title's residential title insurance policy includes a seal "upon its face." The seal states "THE SECURITY TITLE GUARANTEE CORPORA-TION OF BALTIMORE, Incorporated 1952 Baltimore." In both *Cook* and *Stelts*, our supreme court implied that if the document at issue had a seal "upon its face," the court would

not have needed to determine whether the parties intended to create a sealed instrument. Moreover, this court found the inclusion of "L.S." to be significant in *Winyah*.

Security Title argues that the purpose of the seal is "to show that it is the act of the corporation ... [and] that the company's agent is authorized to complete the policy schedules to make the Policy valid." It asserts that the "mere affixation of a corporate seal" does not make the policy a "sealed instrument," citing *Central National Bank of Columbia v. Charlotte, Columbia & Augusta Railroad Co.*, 5 S.C. 156, 158 (1874) (explaining that the seal of corporation is not, in itself, conclusive of an intent to make a specialty as it is equally appropriate as means of evidencing the assent of a corporation to be bound by a simple contract as by a specialty), in support of its position.

In *Republic Contracting Corp. v. South Carolina Department of Highways & Public Transportation*, this court concluded that a statute requiring an engineer to place his professional engineer's seal and endorsement on bridge plans did not render the plans a "sealed instrument" triggering the application of the twenty-year statute of limitations. 332 S.C. 197, 205–06, 503 S.E.2d 761, 766 (Ct.App.1998); *see* S.C.Code Ann. § 40–22–370(3), (4), and (6) (Supp.1997) (requiring plans prepared by a registered engineer to include the engineer's seal and endorsement when filed with public authorities and when issued for use as job site record documents). Moreover, nothing in the statute "lead[s] to the inference that a purpose of the mandate for affixing a seal and an endorsement is to extend the time in which an action can be brought concerning a document on which these items appear." *Republic Contracting*, 332 S.C. at 205–06, 503 S.E.2d at 766; *see also Landmark Eng'g, Inc. v. Cooper*, 222 Ga.App. 752, 476 S.E.2d 63, 64 (1996) (explaining that a surveyor's seal ensures responsibility for his work but does not create a twenty-year statute of limitations prescribed for documents under seal).

 The same cannot be said under the unique circumstances of this case. There is no statutory requirement that a title insurance company place its corporate seal and endorsement on a policy; this alone distinguishes the seal in this case from the engineer's seal in *Republic*. The court is bound by

the rules of contract construction requiring that insurance policies be construed against the drafter and in favor of coverage. Therefore, we find the presence of the seal on the face of the policy, next to the president's signature, evidences an intent to create a sealed instrument.

Moreover, the purpose of residential title policies—the protection of homeowners from unknown title defects—lends additional support to this result. The Lyons purchased the Property with the intent to build their retirement home upon it. The standard terms for a residential note and mortgage are fifteen to thirty years. A twenty-year statute of limitations allows policyholders to carefully monitor situations as they unfold, ultimately preventing the bringing of unnecessary claims or litigation. Thus, we agree with the circuit court that "the policies are indeed sealed instruments and that the twenty-year statute of limitations applies."

## II. Governmental Police Power Exclusion

 Security Title further asserts the circuit court erred in granting the Lyons partial summary judgment because the title policy's "governmental police power" exclusion (Exclusion 1) excludes coverage as a matter of law. We disagree.

> Insurance policies are subject to the general rules of contract construction. The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.

> Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. It is a question of law for the court whether the language of a contract is ambiguous. Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.

*Whitlock*, 399 S.C. at 614–15, 732 S.E.2d at 628 (citations omitted).

Insurance policy exclusions are construed "most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton,* 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005). This rule applies to title insurance contracts. *First Carolinas Joint Stock Land Bank of Columbia v. N.Y. Title,* 172 S.C. 435, 445, 174 S.E. 402, 406 (1934). "Generally, title insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes title." *Firstland Vill. Assocs. v. Lawyer's Title Ins. Co.,* 277 S.C. 184, 186, 284 S.E.2d 582, 583 (1981).

In this case, Exclusion 1 states the following:

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:

 • land use

 • improvements on the land

 • land division

 • environmental protection

 This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.

 This exclusion does not limit the zoning coverage described in Items 12 and 13 of the Covered Title Risks.

The "Covered Title Risks" section of the policy provides that the policy covers certain listed title risks if the listed risk affects title on the policy date. The Covered Title Risks include but are not limited to the following:

10. Someone else has an easement on your land.

. . . .

13. You cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law.

14. Other defects, liens, or encumbrances.

Security Title contends the county's no-build resolution—prohibiting the issuance of building permits on property located in the Spoil Easement—was neither in the "public record" as defined by the policy nor available for title examination on the date the policy was issued. Thus, according to Security Title, coverage is excluded by the "governmental police power" provision of Exclusion 1. We disagree.

The title policy defines "public records" as "title records that give constructive notice of matters affecting your title—according to the state statutes where your land is located." As to such public records, section 30–7–10 provides, in pertinent part:

> [G]enerally all instruments in writing conveying an interest in real estate required by law to be recorded in the office of the register of deeds ... are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds ... of the county in which the real property affected is situated.

S.C.Code Ann. § 30–7–10 (1976); *see also Carolina Chloride, Inc. v. Richland Cty.*, 394 S.C. 154, 169, 714 S.E.2d 869, 876 (2011) (explaining that zoning designations are part of the public record).

It is the Lyons' position that a government regulation is inherently a public record and that, as a result, Exclusion 1 is inapplicable. After considering the purpose of the title policy, the circuit court construed the term "public record" against Security Title because the term "public record" may be fairly and reasonably understood in more than one way. *See Farr v. Duke Power Co.*, 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975) ("A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one.").

In reaching this conclusion, the circuit court referenced the South Carolina district court's opinion considering "the same spoils easement, no-build resolution, and title insurance policy language." *See Whitlock*, 2011 WL 4549367 at *2–4. We, like the circuit court, find the district court's reasoning logical and its conclusion persuasive. *See Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915

(1995) (stating that ambiguities are construed against the insurer); *Phillips v. Periodical Publishers' Serv. Bureau, Inc.,* 300 S.C. 444, 446, 388 S.E.2d 787, 789 (1989) (explaining that although a district court's decision is not binding, it is nevertheless persuasive authority).

The title policy provides broad coverage for title problems created by laws and regulations addressing land use and improvements on land. Because Security Title drafted the contract, it could easily have defined the term "public record" to exclude zoning laws and regulations or drafted other exclusionary language. Like the circuit court and district court, we find the term "public record" to be ambiguous as defined in the policy. Thus, we hold the circuit court properly granted partial summary judgment in favor of coverage because the Spoil Easement and no-build resolution were public records not located during the title search.

## III. Zoning Regulation as Land Use Restriction Triggering Coverage

The parties dispute whether a mobile home, which would be permitted on the Property, is a "single-family residence" as the term is used in the policy, and whether the zoning regulation preventing construction of the site-built house the Lyons intended to construct on the Property triggers title coverage. It is undisputed that a mobile home with numerous extensions and additions was previously located on the Property. It is also undisputed that due to the no-build resolution, Horry County will not permit the Lyons to construct a "site-built" home.

Security Title concedes that its policy does not define "single-family residence" but argues that the "General Assembly implicitly recognizes that mobile homes are ordinarily used as single-family residences." *See* S.C.Code Ann. § 27–40–210(14) (2007) (defining "single family residence" as "a structure maintained and used as a single dwelling unit"); S.C.Code Ann. § 27–40–210(3) (2007) (defining "dwelling unit" to include landlord-owned mobile homes). Here, Exclusion 1 "does not limit the zoning coverage described in Items 12 and 13 of

Covered Title Risks." "Covered Title Risks" item 13 states that the policy provides coverage if "[one] cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law." The circuit court concluded that, like "public record," the term "single-family residence" is ambiguous. Therefore, the circuit court construed the term in favor of the Lyons and found that "Covered Title Risks" item 13 provided coverage because the Lyons "cannot use [the Property] as a single-family residence due to the existing zoning law preventing them from building a site-built home."

Our review of the record reveals that the term "single-family residence" is not defined by the policy. As this term's precise meaning is unclear, we find the circuit court properly construed the policy against the drafter so as not to include a mobile home. Thus, Exclusion 1 does not bar coverage because the Lyons cannot use the Property for a "single-family residence." *See Diamond*, 318 S.C. at 236, 456 S.E.2d at 915 (stating that ambiguities are construed against the insurer). Therefore, we hold the circuit court did not err in granting summary judgment as to this issue.

## IV. Mitigation of Damages

Security Title argues the circuit court erred in determining that the Lyons did not fail to mitigate their damages.

■■■■ "A party injured by the acts of another is required to do those things a person of ordinary prudence would do under the circumstances, but the law does not require him to exert himself unreasonably or incur substantial expense to avoid damages." *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 285, 573 S.E.2d 830, 838 (Ct.App.2002); *see also Newman v. Brown*, 228 S.C. 472, 480, 90 S.E.2d 649, 653 (1955) ("It is the undoubted general rule that it is the duty of the owner of the property, which is injured by the negligence of another, to use reasonable means to minimize the damages."). "The duty to mitigate losses applies to contracts." *Cisson Constr., Inc. v. Reynolds & Assocs., Inc.*, 311 S.C. 499, 503, 429 S.E.2d 847, 849 (Ct.App.1993). "Whether the party acted reasonably to

mitigate damages is ordinarily a question for the jury." *Baril,* 352 S.C. at 285, 573 S.E.2d at 838.

> A defendant who claims a plaintiff's damages could have been mitigated has the burden of proving that mitigation is possible and reasonable. *Moore v. Moore,* 360 S.C. 241, 262, 599 S.E.2d 467, 478 (Ct.App.2004). "Moreover, the party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced." *Id.* (quoting *Chastain v. Owens Carolina, Inc.,* 310 S.C. 417, 420, 426 S.E.2d 834, 835 (Ct.App.1993)). The reasonableness of a party's actions to mitigate damages is a question of fact which cannot be decided as a matter of law when conflicting evidence is presented. *Chastain,* 310 S.C. at 420, 426 S.E.2d at 836; *Hinton v. Designer Ensembles, Inc.,* 335 S.C. 305, 320, 516 S.E.2d 665, 672 (Ct.App. 1999), *overruled on other grounds by* 343 S.C. 236, 246, 540 S.E.2d 94, 99 (2000).

The "Limitation of Company's Liability" section of the policy provides in part:

> a. We will pay up to your actual loss or the Policy Amount in force when the claim is made—whichever is less.
>
> . . . .
>
> e. If you do anything to affect any right of recovery you may have, we can subtract from our liability the amount by which you reduced the value of that right.

### A. Offer to Purchase Subject Property

 Security Title argues the Lyons failed to mitigate their damages when they rejected an offer to purchase the Property. We disagree.

In his deposition, Mr. Lyons testified that he "thinks" he was offered $475,000 for the Property in September 2006. Security Title contends that "[h]ad the Lyons accepted the offer, they would not only have recouped their initial investment but would have reaped a profit from the sale." Security Title further contends that the circuit court should have let a jury determine "the amount of damages, or lack thereof as a consequence of the Lyons' failure to mitigate." The circuit

court acknowledged the duty to mitigate, but cogently explained:

> [I]t cannot be said that after the discovery of an easement held by the United States that prevents construction of a dock, the law requires one to sell the entire property or be thwarted from bringing suit against his title insurance company at a later date; such a requirement would call for a party to exert himself unreasonably.

We agree with the circuit court that the Lyons did not fail to mitigate their damages. *See Baril,* 352 S.C. at 285, 573 S.E.2d at 838 (explaining that the law does not require an injured party "to exert himself unreasonably or incur substantial expense to avoid damages"). Moreover, we find that Security Title's argument fails given that the Lyons could not have provided a potential purchaser with clean title to the Property because the Spoil Easement is properly recorded.

### B. Demolition of Mobile Home

 Security Title further contends that the Lyons failed to mitigate their losses when they demolished the mobile home previously located on the Property. We disagree.

Although Security Title raised this argument in its Rule 59(e) motion to reconsider, it did not raise this issue to the circuit court at the hearing on the Lyons' motion for summary judgment or by way of written opposition. Thus, this issue is not preserved for appellate review. *See Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.,* 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (finding an issue not preserved because "a party may not raise an issue in a motion to reconsider, alter, or amend a judgment that could have been presented prior to the judgment").

### V. Date of Loss

 The circuit court determined that damages "are to be calculated based on the diminution in value caused by the title defects, measured from the date the property was purchased." Security Title contests this, arguing that any loss (diminution in value) should be calculated based on the value of the lot when Security Title received the Lyons' claim.

The circuit court further held, however, that summary judgment was not appropriate as to damages "[b]ecause the amount of diminution of value is a genuine issue of material fact ... [and f]urther hearings will be necessary to establish the amount of damages." *See Stanley v. Atl. Title Ins. Co.,* 377 S.C. 405, 411–12, 661 S.E.2d 62, 65–66 (2008). Because the circuit court denied the Lyons' motion for summary judgment as to damages,[8] we find this issue is not properly before this court. *See Ballenger v. Bowen,* 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) (explaining that the denial of a motion for summary judgment is not immediately appealable because it does not finally determine anything about the merits or strike a defense); *Kinard v. Richardson,* 407 S.C. 247, 263–64, 754 S.E.2d 888, 897 (Ct.App.2014) ("[T]he denial of a motion for summary judgment is not appealable, even after final judgment." (quoting *Olson v. Faculty House of Carolina, Inc.,* 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003))).[9]

## CONCLUSION

For the foregoing reasons, we hold the circuit court properly found that (1) the Lyons' claims were not barred by the statute of limitation, (2) Exclusion 1 does not bar coverage, and (3) the Lyons did not fail to mitigate their damages. Accordingly, the decision of the circuit court granting partial summary judgment is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.

---

8. The circuit court also declined to accept the Lyons' argument that the title policies insure their loss to the full value of the policies, explaining that the "spoilage easement and no-build resolution have not rendered the property useless or completely unmarketable."

9. In any event, as noted above, our supreme court's ruling on the certified question in *Whitlock* is likely determinative of this question. *See* 399 S.C. at 616, 732 S.E.2d at 629 (holding that, in the presence of the policy's ambiguity, it was constrained to interpret the provision "most favorably to the insured. In this case, the date the property was purchased is the proper valuation date.").